**Robert PETIT, et al., Plaintiffs,**

v.

**CITY OF CHICAGO, et al., Defendants.**

**No. 90 C 4984.**

United States District Court,
N.D. Illinois, E.D.

May 16, 1991.

---

Kimberly A. Sutherland, Chicago, Ill., for plaintiffs.

Sarah Vanderwicken, Jay M. Kertez, Kelly R. Welsh, City of Chicago–Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

### I. FACTS

In 1973, the United States Department of Justice brought suit against the City of Chicago (the "City") charging discrimination in hiring and promoting blacks, His-panics and women within the Chicago Police Department. As a result, in January of 1976, a permanent injunction was entered barring the City from using any tests, qualifications, standards or procedures that were not job-related. In particular, the City was enjoined from excluding "blacks, Spanish-surnamed persons or women from employment opportunities in the Chicago Police Department." *United States v. City of Chicago*, 411 F.Supp. 218, 248 (N.D.Ill.1976), *aff'd*, 549 F.2d 415, 439 (7th Cir.1977). The City was specifically ordered to "maintain a sergeant mix reasonably representative of the patrol force." *Id.* at 250.

In 1978 and 1979, the City administered a sergeants' examination to determine promotion eligibility in rank order. The City compiled a sergeants' promotion list based upon the results of the 1978–79 examination, and the City, under the court's supervision, promoted police officers to the rank of sergeant in rank order and subject to imposed ratios. *United States v. City of Chicago*, 663 F.2d 1354 (7th Cir.1981) (modifying ratios for promotion of sergeants to twenty-five percent black and Hispanic males; five percent female).

From 1985 to 1988, the City developed and administered a new sergeants' examination. The 1985–88 examination consisted of four parts, each of which was weighted differently: (1) 28% weight for the multiple choice written test; (2) 29% weight for the short-answer written test; (3) 40% weight for an oral board examination; and (4) 3% weight for performance evaluations. When the tests were first scored, there was an impermissible disparate impact on blacks and Hispanics. *United States v. City of Chicago*, No. 73 C 2080, memorandum order at 3 (N.D.Ill. Nov. 21, 1988) (1988 WL 128694, 1988 U.S.Dist. LEXIS 13242). The City moved to superimpose a quota on the sergeants' list to make adjustments in favor of Hispanic and female applicants. The City's motion was denied. *Id.*

Many of the plaintiffs in the present case intervened in *City of Chicago* charging, among other things, discrimination regard-

ing the scoring of the 1985–88 sergeants' promotional examination.[1] Specifically, the intervenors complained that the City "manipulated" the raw scores of the sergeants' promotion test to purposefully benefit racial minorities and, therefore, discriminate against white applicants for sergeant. Intervention was upheld in *United States v. City of Chicago*, 870 F.2d 1256 (7th Cir. 1989). Thereafter, the City moved to dismiss the intervenors' claims. On October 26, 1990, some claims were dismissed with prejudice and some without prejudice.[2]

Having failed to obtain relief in *City of Chicago*, the intervenors, along with additional white police officers, filed the present action against the City and also against numerous city officials.[3] The complaint in this action again charges discrimination in the scoring and use of the 1985–88 sergeants' examination. The City now moves to dismiss the present lawsuit arguing, among other things, the doctrine of *res judicata*.

1. The parties dispute which, as well as how many, of the present plaintiffs were intervenors in *City of Chicago*.

2. The relevant paragraph from the final memorandum opinion reads:

Accordingly, in *United States v. City of Chicago*, 73 C 2080, a final judgment will be entered dismissing without prejudice the claim of plaintiff-intervenors Robert Petit, et al. challenging, under the equal protection clause of the fourteenth amendment to the Constitution of the United States, the statistical standardization of scores on the 1987 sergeant promotion test and dismissing with prejudice those claims of plaintiff-intervenors Robert Petit, et al. contained in paragraphs 19–f, 20, 23, of the intervenors' first amended complaint and those claims based upon the due process clause of the fourteenth amendment to the Constitution of the United States and those claims under 42 U.S.C. §§ 1981, 1985(3) and 1986 and the pendent state law claim contained in Count II of the intervenors' first amended complaint.
*United States v. City of Chicago*, 752 F.Supp. 252, 255 (N.D.Ill.1990).

3. Plaintiffs have divided the individual defendants into two groups: (1) the Daley Administration defendants, which include Mayor Richard M. Daley and officials hired during his administration—Glenn Carr, Commissioner of the City's Department of Personnel, and Kelly R. Welsh, Corporation Counsel; and (2) the Saw-

## II. CLAIMS PREVIOUSLY DISMISSED WITH PREJUDICE

Concerning the doctrine of *res judicata*,[4] the City's motion to dismiss divides the plaintiffs into two distinct groups: Those plaintiffs who intervened in *United States v. City of Chicago* (the "intervenors") and those plaintiffs who did not (the "non-intervenors"). The first inquiry is whether the intervenors are precluded by the doctrine of *res judicata* from bringing the present suit. If they are, the second inquiry is whether the non-intervenors are in privity with the intervenors and, therefore, also precluded from bringing suit.

### A. Res Judicata

 The federal common law of *res judicata* determines the preclusive effect of a federal court judgment on a subsequent federal court case. *Conner v. Reinhard*, 847 F.2d 384, 394 (7th Cir.1988) (*citing In re Energy Coop., Inc.*, 814 F.2d 1226, 1230 (7th Cir.1987)). Under the doc-

yer Administration defendants, which include former Mayor Eugene Sawyer and officials hired during his administration—Jesses Hoskins, Commissioner of the City's Department of Personnel until February, 1989; Judson Miner, Corporation Counsel until April, 1989; Brigette Arimond, Special Deputy Corporation Counsel for affirmative action until April, 1989; and Robert Joyce, who plaintiffs state was also Commissioner of the City's Department of Personnel "at all times pertinent." In addition, plaintiffs have sued four additional defendants that are included in *both* the "Daley group" and the "Sawyer group" of defendants: Leroy Martin, Superintendent of the Chicago Police Department (the "CPD"); Gerald Cooper, Executive Assistant and General Counsel to Leroy Martin; Edward Brooks, Deputy Superintendent in charge of the Bureau of Administrative Services of the CPD as well as Chair of the CPD's Academic Selection Board; and Hubert Holton, Commander of the Personnel Division of the CPD.

4. The term *res judicata* encompasses both claim preclusion, the traditional definition of *res judicata*, as well as issue preclusion, the analog of estoppel by judgment. *See* Restatement (Second) of Judgments § 131 (1982). Many courts, including the United States Supreme Court, have adopted the new terminology of "claim preclusion" and "issue preclusion." Since the parties use *res judicata* in their briefs, that is the term that will be used throughout this opinion.

trine of *res judicata,* a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Car Carriers, Inc. v. Ford Motor,* 789 F.2d 589, 593 (7th Cir.1986) (*citing Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979)) ("Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost."). Previously, a final judgment on the merits was entered concerning the claims of the intervenors. *United States v. City of Chicago,* 752 F.Supp. 252 (N.D.Ill.1990) (expressly stating that there was no just reason for delay and expressly directing entry of final judgment); *see* Fed.R.Civ.P. 54(b); *see also Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n,* 804 F.2d 390 (7th Cir.1986) (*citing American Postal Workers Union v. United States Postal Service,* 736 F.2d 317, 319 (6th Cir.1984)) ("Final judgment in the case as a whole is not necessary; motion to dismiss decision can be given preclusive effect as long as issue finally decided.").

In determining the scope of a "cause of action," the Seventh Circuit uses the "same transaction" test. *Alexander v. Chicago Park District,* 773 F.2d 850 (7th Cir.1985). Under this test, a cause of action is defined as "a 'single core of operative facts' which give rise to a remedy." *Id.* at 854. Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit. Thus, a "mere change in the legal theory does not create a new cause of action." *Id.* Under the "same transaction" test, the present case is based upon the same cause of action as *United States v. City of Chicago.* The single core of operative facts that was the subject of the intervenors' complaint in *City of Chicago* is the same as alleged in this case—the standardization of the 1985–88 sergeants' promotion examination for rater and race. Plaintiffs do not argue otherwise. Therefore, *res judicata* applies.

Several of the intervenors' claims were dismissed *with prejudice* and one claim was dismissed *without prejudice.* As parties in *City of Chicago,* the intervenors are

precluded by the doctrine of *res judicata. See Local 322 v. Johnson Controls, Inc.,* 921 F.2d 732 (7th Cir.1991); *County of Cook v. Midcon Corp.,* 574 F.Supp. 902, 913–14 (N.D.Ill.1983) (Intervenors are parties). The intervenors' claims that were previously dismissed *with prejudice* cannot be refiled in this action, and the City's motion to dismiss as to the intervenors is granted.

### B. Privity

As for the non-intervenors, it must be decided whether they were "in privity" with the intervenors. The term "privity" signifies that the relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon another who was not directly a party to the litigation. *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 688 & n. 9 (7th Cir.1986); 18 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 4449 (1981 & Supp.1990). Privity between parties is established where the parties' interests are so closely aligned that they represent the same legal interests. *Fitzsimmons,* 805 F.2d at 688. Under federal *res judicata* law, a person may be precluded if the prior party so closely represented his interests as to be his "virtual representative." *Id.* at 688 n. 9 (*quoting Nash City Bd. of Educ. v. Biltmore Co.,* 640 F.2d 484, 493 (4th Cir.1981)). "Virtual representation" is a doctrine allowing the preclusion of parties not present in the first case, provided that someone who was present had the same interests as the absent party and so had every reason to prosecute or defend the case as vigorously. *Vas–Cath, Inc. v. Mahurkar,* 745 F.Supp. 517, 531 (N.D.Ill.1990) (Easterbrook, J.).

The issue, therefore, is whether the intervenors adequately and vigorously represented the interests of the non-intervening white police officers in the prior litigation. *See* F. FRIEDENTHAL, M. KANE, & A. MILLER, CIVIL PROCEDURE 683 (1985) (privity arises when the interests of the non-party were adequately represented in the initial action). This is not a case of police officers

who could have intervened, but did not. Mandatory intervention has been rejected both in this Circuit and in the United States Supreme Court. *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) (rejecting the rule that plaintiffs should have intervened in first suit);[5] *Fabricius v. Freeman,* 466 F.2d 689, 693 (7th Cir. 1972) (that one could have intervened and did not, does not result in the person being bound by first judgment). The present case is one where some white police officers *did* intervene and represent the interests of the white employees. Moreover, the prior litigation was adversarial at trial and appellate level and concluded in a dismissal of claims, not in a consent decree. Thus, the interests and representation of the white employees, which concerned the Court in *Martin v. Wilks,* is not questioned in this case.

The legal and factual issues in this case are identical to the issues in *City of Chicago.* The non-intervenors retained the same counsel who represented the intervenors in *City of Chicago.* The non-intervenors have raised no question about the adequacy of representation previously afforded the intervenors when they pursued the interests of the white police officers. Such identity of interests alone, however, is not sufficient to yield a finding of privity between the parties. *Mann v. City of Albany, Georgia,* 883 F.2d 999, 1003 (11th Cir.1989) (these factors alone are not sufficient to warrant denying a later party his day in court). Other factors to be considered include a close relationship between the prior and present parties; participation in the prior litigation; apparent acquiescence;

and whether the present party deliberately maneuvered to avoid the effects of the first action. 18 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 4457 (1981 & Supp.1990).

In addition to the identical nature of this case and *City of Chicago,* other factors weigh in favor of privity. Prior to filing this suit, the intervenors attempted to voluntarily dismiss *without prejudice* claims in *City of Chicago* so that the present suit could be brought. As detailed in Judge Marshall's Final Memorandum Order:

> Intervenors Petit, et al. and Erwin, et al.[6] disagree with the orders approving the recommendations of Magistrate Bucklo and dismissing many of the allegations of their complaints. Thus, although their counsel persuaded the Court of Appeals that they were entitled to intervene in these actions, on August 16, 1990 the Petit and Erwin intervenors moved to dismiss their intervening complaints without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, so that they could refile them before different judges as amendments in their fresh complaints....

> . . . . .

> The matter was heard in open court. Counsel for the Petit and Erwin intervenors urged that I dismiss the totality of both intervening complaints without prejudice. *I stated unequivocally that I would not do that;* that only the allegations which had survived the earlier motions to dismiss would be dismissed without prejudice.

---

5. In *Martin,* a group of white firefighters sued the City of Birmingham, Alabama alleging discrimination because they were being denied promotions in favor of less qualified black firefighters. Birmingham defended its promotion decisions claiming reliance upon prior consent decrees that resulted from litigation between Birmingham and a group of black firefighters. *See In re Birmingham Reverse Discrimination Employment Litigation,* 833 F.2d 1492 (1987). Prior to the entering of the consent decrees, a group of white firefighters moved to intervene on the ground that the decrees would adversely affect their rights. Their motion to intervene was denied as untimely, and they then filed a

separate complaint alleging that the decrees illegally discriminated against them. The Court held that the white firefighters were not privies to the consent decrees because their interests had not been adequately represented in the earlier discrimination suit and, thus, their independent claims of unlawful discrimination were not precluded. *Martin,* 109 S.Ct. at 2187.

6. The same counsel represented both the Petit intervenors, who challenged the standardization of the sergeants' examination, and the Erwin intervenors, who challenged the standardization of the 1987 lieutenants' examination.

*United States v. City of Chicago,* 752 F.Supp. 252, 255 (N.D.Ill.1990) (footnote and emphasis added).

The intervenors cannot avoid an express federal court order that dismissed their claims *with prejudice* by adding the non-intervenors and refiling this claim. A finding of privity comports with the policy behind *res judicata.* If the intervenors succeeded originally, all of the white police officers would have benefitted—even the non-intervenors. On the other hand, if the intervenors lost, which they did, the non-intervenors cannot obtain a second determination by bringing this separate action. Such an action would encourage "fence-sitting" and discourage the principles and policies the doctrine of *res judicata* was designed to promote.

Arguing that the intervenors and non-intervenors are not in privity, plaintiffs rely upon *Grann v. City of Madison,* 738 F.2d 786, 789 (7th Cir.1984); *cf. United States v. City of Chicago,* 870 F.2d 1256, 1263 (7th Cir.1989) (noting that *Grann* line of cases has been rejected by the Eleventh Circuit in a thoughtful opinion) (Eleventh Circuit opinion *affirmed* by *Martin v. Wilks, supra* ). In *Grann,* the prior judgment was entered in state court, and the Court of Appeals expressly decided the issue of privity on the basis of Wisconsin *res judicata* law. *See Grann,* 738 F.2d at 788–89. The present case entails application of federal *res judicata* law and, consequently, *Grann* is inapposite. Plaintiffs also cite *Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860 (5th Cir.1985). In that case, the prior litigant was the husband-father of the present litigants, his wife and children. The Fifth Circuit held that the family relationship was not "sufficiently close" under the doctrine of virtual representation to support preclusion of the wife and children's later claims. *Freeman,* 771 F.2d at 863–64. To preclude a subsequent nonparty under the doctrine of virtual representation required "more than a showing of parallel interests or, even, a use of the same attorney in both suits." *Id.* at 864. Here, however, more factors weigh in favor of a finding of privity than just the use of the same attorney and parallel interests.

Lastly, a finding of privity between the intervenors and the non-intervenors follows the trend broadening the concept of parties and their privies. *See Index Fund, Inc. v. Hagopian,* 677 F.Supp. 710, 716 (S.D.N.Y. 1987).

The claims dismissed with prejudice include all claims brought under 42 U.S.C. § 1981 and all pendent state law claims. Thus, the only claims which survive the earlier dismissal with prejudice are the Count I equal protection claims brought under 42 U.S.C. § 1983 (which were expressly dismissed without prejudice) and the Count III claim of plaintiff Thomas Earth. The Count I claims brought pursuant to 42 U.S.C. § 1981, as well as all Count II pendent state law claims, are dismissed.

### C. New Conduct

■ Plaintiffs argue that *res judicata* does not apply against any of the plaintiffs for new conduct—specifically, promotions made in July and November of 1990, and February of 1991. The new conduct that plaintiffs allege, however, is simply promotions made from the 1985–88 sergeants' list. Plaintiffs' lawsuit alleges discrimination in the standardization and scoring of the 1985–88 test. Any promotions made from the list that resulted from the test is not "new conduct." Rather, each promotion made from the disputed list may result in a separate and individual remedy if the "original conduct"—the standardization and scoring of the test—is found to be in violation of 42 U.S.C. § 1983. Thus, *res judicata* does apply to any promotions made from the disputed list. If the City engages in any "new conduct" such as administering a new sergeants' examination or changing the list that resulted from the 1985–88 examination, then plaintiffs would not be barred by the doctrine of *res judicata.*

### III. MOTION TO DISMISS

Dismissal under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim is appropriate if "it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985) (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). When presented with a motion to dismiss, a court construes pleadings liberally, and mere vagueness or lack of detail does not constitute a sufficient ground for dismissal. *Strauss,* 760 F.2d at 767. Nonetheless, a complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Papapetropoulous v. Milwaukee Transp. Services,* 795 F.2d 591, 594 (7th Cir.1986). In deciding a motion to dismiss, factual allegations of the complaint, as well as any reasonable inferences drawn from them, are taken as true. *Neumann v. John Hancock Mut. Life Ins.,* 736 F.Supp. 182, 183 (N.D.Ill. 1990).

## IV. COUNT II EQUAL PROTECTION CLAIMS BROUGHT PURSUANT TO 42 U.S.C. § 1983

■■■■ Local government units can be sued under § 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The government's liability, however, is *not* based upon the doctrine of *respondeat superior. Id.* at 691–92, 98 S.Ct. at 2036 (government body cannot be held liable under § 1983 merely because it employs a tortfeasor); *but see Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (decision of one official with policymaking authority in a given area constituted official policy). The alleged unconstitutional governmental action must implement or execute "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, ... local governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom'

even though such a custom has not received formal approval through the body's decisionmaking channels." *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2036. A "custom" will be attributed to a government body when the duration and frequency of a practice warrants a finding of either actual or constructive knowledge by the governing body that the practice has become customary among employees. *See Jones v. City of Chicago,* 856 F.2d 985, 995–96 (7th Cir.1988) (custom of keeping "street files" was department wide and long standing).

■■■■ Plaintiffs allege that the City manipulated scores on the 1985–88 sergeants' examination in accordance with a race-conscious policy of increasing the number of blacks and Hispanics promoted and decreasing the number of whites. If plaintiffs' allegations are true, the City of Chicago may be held liable.[7] Taking the factual allegations of the complaint, as well as any reasonable inferences drawn from them, as true, the complaint adequately alleges an equal protection claim under 42 U.S.C. § 1983 against the City. Therefore, plaintiffs' complaint is sufficient under section 1983 to withstand defendants' motion to dismiss. *See United States v. City of Chicago,* 870 F.2d 1256 (7th Cir.1989).

## V. QUALIFIED IMMUNITY

■■■■ Defendants argue that plaintiffs' claims should be dismissed because defendants are protected by the doctrine of qualified immunity. Generally, "public officials are entitled to immunity unless it has been authoritatively decided that certain conduct is forbidden." *Alliance to End Repression v. City of Chicago,* 820 F.2d 873, 875 (7th Cir.1987). Determination of qualified immunity is a legal question whose answer is dependent upon the particular facts of the case. *Green v. Carlson,* 826 F.2d 647, 649 (7th Cir.1987). When a plaintiff sues a government official in his individual capacity,[8] the plaintiff is

---

7. Liability of the individually named defendants is discussed in the next section under the doctrine of qualified immunity.

8. Plaintiffs do not state whether they are suing the City officials in their individual or official capacities. Failure to expressly state that an official is being sued in his individual capacity will generally be construed as an intent to sue a

trying to impose personal liability upon that official for actions performed under color of state law. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985). Plaintiffs allege that defendants manipulated the scores and positions of the eligibility list for the "race-conscious purpose of increasing the number of blacks and Hispanics promoted and decreasing the number of whites." First Amended Complaint at 5. In response, defendants state that standardization of the 1985–88 sergeants' examination was based upon a valid affirmative action program and, thus, defendants are entitled to qualified immunity.

 The Supreme Court enunciated the test for qualified immunity holding that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The *Harlow* standard is specifically designed to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment."[9] *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Whether public officials may be held personally liable for allegedly unlawful official actions turns upon the "objective reasonableness" of the officials' actions. The officials' actions must be assessed in light of the legal rules that were "clearly established" at the time that the action was taken. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Colaizzi v. Walker,* 812 F.2d 304 (7th Cir.1987) (test is "whether the law was clear in relation to the specific facts confronting the public official when he acted").

 To be "clearly established," the right must be "sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." *Colaizzi,* 812 F.2d at 310 (Bauer, C.J., dissenting on other grounds) (*citing Azeez v. Fairman,* 795 F.2d 1296, 1301 (7th Cir.1986)). Since 1978, any distinctions between citizens based upon race, including affirmative action programs, are presumptively unconstitutional. *Regents of University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978). Nevertheless, to correct the effects of past discrimination, a narrowly tailored race-conscious affirmative action program is permissible under the Fourteenth Amendment. *City of Richmond v. J.A. Croson,* 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989). In fact, when implemented to remedy past discrimination, affirmative action programs may be both legal and appropriate. *Id.* at 504, 109 S.Ct. at 726; *Johnson v. Transportation Agency,* 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987) (fitting the defense of a valid affirmative action program within the analytical framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *Wygant v. Jackson Bd. of Educ.,* 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986) (plurality) (affirmative action plan must be justified by a compelling governmental interest and be narrowly tailored to effectuate the plan's purpose).

Affirmative action case law in 1984 held that to implement an affirmative action plan, there must exist: (1) some type of statistical disparity between the local labor force and the minority composition of the

<hr/>

defendant *only* in his official capacity. *Yeksigian v. Nappi,* 900 F.2d 101, 104 (7th Cir.1990). Defendants' motion to dismiss, however, addresses individual capacity arguments. Furthermore, the City itself is sued, which addresses official capacity. *Willis v. Bell,* 726 F.Supp. 1118, 1124 (N.D.Ill.1989) (claim against police superintendent in his official capacity was redundant and dismissed). Since defendants read plaintiffs' complaint as suing them in their individual capacity, the complaint will be read as so doing for purposes of this opinion.

9. Although the issue of qualified immunity is presently being argued on a motion to dismiss, rather than on summary judgment, the Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987).

employer's work force and (2) a time limit on the plan. *Cygnar v. City of Chicago*, 865 F.2d 827, 844 (7th Cir.1989) (*citing Lehman v. Yellow Freight Sys. Inc.*, 651 F.2d 520 (7th Cir.1981)). Defendants argue, consistent with the allegations of the complaint,[10] that they standardized the 1985–88 sergeants' test because of a disparate impact and that the adjusted test results were used to compose a promotion list that had a limited life. The plaintiffs' constitutional right to be free of discrimination was not "clearly established" in 1985, nor by 1988 when the standardization occurred. Under the then prevailing law, defendants were not on notice that adhering to the affirmative action program alleged in the complaint would be unlawful. Moreover, given the state of the law, defendants could have reasonably believed that failing to act in the face of the test's disparate impact would be unlawful. During the time span covered by the 1985–88 sergeants' examination, defendants' actions, taken to correct the examination's disparate impact, did not violate "clearly established" affirmative action law. In light of the Supreme Court's recent decision in *City of Richmond*, defendants' actions, taken to remedy admitted past discrimination within the ranks of the Chicago Police Department, is even less likely to violate "clearly established" affirmative action law.[11]

Defendants have articulated a non-discriminatory rationale for their actions—an affirmative action program—which is expressly alleged in plaintiffs' complaint. *See also United States v. City of Chicago*, No. 73 C 2080, memorandum order (N.D.Ill. Nov. 21, 1988). Plaintiffs have alleged insufficient facts to support that defendants' justification was pretextual or that a defense of an affirmative action plan was invalid given the existing law at the time the actions were taken. *See Johnson v. Transportation Agency*, 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987); *Cygnar v. City of Chicago*, 865 F.2d 827, 837 (7th Cir.1989). Further, plaintiffs fail to allege any facts that show defendants did anything unlawful when they adjusted the 1985–88 sergeants' examination to adjust for the test's disparate impact.[12] The fact that defendants adjusted test scores, without more, does not subject government officials to individual liability. *See Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Therefore, defendants are entitled to qualified immunity and the motion to dismiss the individual defendants is granted.

## VI. COUNT III CLAIM BROUGHT ON BEHALF OF PLAINTIFF THOMAS EARTH

In Count III, plaintiffs apparently attempt to bring an "enforcement action" to compel defendants to comply with an al-

---

**10.** Plaintiffs argue that the last sergeants' promotion list lasted nine years, longer than originally planned, and that nine years is "hardly a plan with a narrow objective and with a limited life." Whether the City adheres to its time limit is a separate issue from whether a time limit exists. At this time, that the City has a specified time limit on use of the plan is sufficient. If facts should develop later in this litigation that reveal otherwise, plaintiffs may ask leave to move to add the individual defendants. *See infra* note 12.

**11.** Presently, the law is that affirmative action programs are only valid if implemented to remedy "past discrimination." *See City of Richmond, supra.* The Chicago Police Department has previously operated under court-imposed quotas because of its history of discrimination. Thus, because a history of past discrimination exists, defendants still may not be on notice that adherence to an affirmative action program

would be unlawful, because the plan may have been proper in this case. In *City of Richmond*, the challenged affirmative action program involved a fixed racial quota of 30% and was designed to remedy general societal discrimination. Neither of those factors are present in this challenge to the standardization of the 1985–88 sergeants' examination.

**12.** Plaintiffs argue that discovery has been withheld which would enable them to further respond to defendants' assertion of qualified immunity based on an affirmative action plan. If it should appear, based on subsequent discovery, that qualified immunity is not available (*e.g.*, because the defendants gave "white applicants knock-out drops to impair their performance on the examination," *United States v. City of Chicago*, 870 F.2d at 1261), plaintiffs may move to vacate this order and to reinstate individual liability claims against the defendants.

leged order from the previous case, *United States v. City of Chicago*, No. 73 C 2080. Plaintiffs, however, do not support their complaint with a copy of any order. The wording quoted in the complaint is only advisory and not presented in the form of a judicially enforceable order. Plaintiffs fail to state a claim upon which relief may be granted and, therefore, defendants' motion to dismiss Count III is granted.

IT IS THEREFORE ORDERED that:

(1) Defendants' motion to dismiss Count I claims brought pursuant to 42 U.S.C. § 1981, as well as all Count II pendent state law claims and Count III, is granted.

(2) Defendants' motion to dismiss Count I equal protection claims brought under 42 U.S.C. § 1983 is denied.

(3) Defendants' motion to dismiss defendants Richard M. Daley, Glenn Carr, Kelly R. Welsh, Eugene Sawyer, Jesses Hoskins, Judson Miner, Brigette Arimond, Robert Joyce, Leroy Martin, Gerald Cooper, Edward Brooks and Hubert Holton, both in their official and individual capacities, is granted.

(5) Defendant City of Chicago is ordered to answer plaintiffs' complaint by May 30, 1991.

(6) Status hearing set for June 6, 1991 at 9:15 a.m.