_____

No. 93-1811
_____


Sharon Tyus,                          *
                                      *
          Plaintiff,                  *
                                      *
Sterling S. Miller,                   *
                                      *
          Appellant,                  *
                                      *  Appeal from the United States
Irving Clay, Jr.; Bertha              *  District Court for the
Mitchell,                             *  Eastern District of Missouri.
                                      *
          Plaintiffs,                 *
                                      *
Clarence Woodruff,                    *
                                      *
          Appellant,                  *
                                      *
Claude Taylor,                        *
                                      *
          Plaintiff,                  *
                                      *
Paula J. Carter,                      *
                                      *
          Appellant,                  *
                                      *
Freeman Bosley, Sr.,                  *
                                      *
          Plaintiff,                  *
                                      *
William L. Clay, Jr.; Kenneth         *
Jones,                                *
                                      *
          Appellants,                 *
                                      *
     v.                               *
                                      *
Vincent C. Schoemehl; Thomas A.       *
Villa; Board of Aldermen, of          *
the City of St. Louis; Board of       *
Election Commissioners, of St.        *
Louis City; City of St. Louis,        *
a municipal corporation,              *
                                      *
          Appellees.                  *

_____

Submitted:  April 9, 1996

Filed:  August 16, 1996
_____

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and
     MAGILL, Circuit Judge.

_____

MAGILL, Circuit Judge.


     At issue in this § 2 Voting Rights Act case is whether issue
preclusion bars certain plaintiffs-appellants[1] from bringing a
second suit challenging the St. Louis aldermanic district
boundaries, which are drawn based on the 1990 federal decennial
census.  Although these appellants were not parties to the original
lawsuit challenging the aldermanic boundaries, see African American
Voting Rights Legal Defense Fund v. Villa, 54 F.3d 1345 (8th Cir.
1995) (the Aldermen-AAVR suit), cert. denied, 116 S. Ct. 913
(1996), they were "virtually represented" by those plaintiffs to
the Aldermen-AAVR suit, and therefore issue preclusion does apply.
The district court[2] held that claim preclusion, rather than issue
preclusion, applies, so we affirm on alternate grounds.


**I.**


     The city of St. Louis is governed by a Board of Aldermen
consisting of twenty-eight aldermen elected from twenty-eight

_____

     [1]Plaintiffs in this suit included Sharon Tyus, Irving Clay,
Jr., Bertha Mitchell, Claude Taylor, Freeman Bosley, Sr.,
Sterling Miller, Clarence Woodruff, and Paula Carter.  In
addition, William Clay, Jr. and Kenneth Jones sought to
intervene, but their motion was denied as moot.  Only Miller,
Woodruff, Carter, Clay, Jr., and Jones have appealed the district
court's decision.

     [2]The Honorable Edward L. Filippine, United States District
Judge for the Eastern District of Missouri.

-2-

single-member wards. In 1991, St. Louis began to redraw the aldermanic boundaries in accordance with the 1990 census. Although the census revealed that African-Americans comprised a majority in thirteen of the twenty-eight wards, and were a plurality in one additional ward, the majority of aldermen voted to adopt an aldermanic map that provided for sixteen wards in which whites have a voting age majority and twelve wards in which African-Americans have a voting age majority.

## A.   **AAVR Lawsuit**

On January 16, 1992, a group of African-Americans filed the AAVR lawsuit, challenging the validity of the new ward boundaries. See African American Voting Rights Legal Defense Fund v. Villa, No. 4:92 CV 00044 (E.D. Mo. 1992). Among the named plaintiffs were five African-American St. Louis aldermen--Freeman Bosley, Sr., Sharon Tyus, Bertha Mitchell, Claude Taylor, and Irving Clay, Jr. (the Aldermen plaintiffs)--and the African American Voting Rights Legal Defense Fund. Initially, several different counsel represented the plaintiffs. Eventually, these attorneys were replaced with attorney Judson Miner.

In this suit, plaintiffs contended that (1) the boundary lines were drawn in such a way as to fragment concentrations of black population, diluting black voting strength in violation of § 2 of the Voting Rights Act, 42 U.S.C.A. § 1973 (West 1994 & Supp. 1996), and the First, Thirteenth, Fourteenth, and Fifteenth Amendments to the United States Constitution; (2) the boundary lines were drawn in such a way as to pack concentrations of black population into specific wards, diluting overall black voting strength in violation of the above provisions; and (3) the ward boundaries violate the Fourteenth Amendment, because they have populations with a variance in excess of ten percent.

On February 19, 1992, defendants in the Aldermen-AAVR suit

(collectively, the City) moved for summary judgment, contending that the map had been drawn in such a way as to provide substantial proportionality. Four affidavits supporting this claim, including a statistical analysis performed by Donald L. Davidson, the City's expert, were attached. On April 27, 1992, counsel for plaintiffs opposed this motion with an affidavit from expert witness Dr. Charlene Jones. The affidavit discussed the appropriate means of measuring proportional representation and other issues surrounding both the dilution claim and the Fourteenth Amendment claim.

Meanwhile, a dispute over trial strategy had arisen between the Aldermen plaintiffs and original counsel. On April 24, 1992, the Aldermen plaintiffs hired their current attorney, Judson Miner (although, for reasons unexplained by the parties, original counsel continued to file papers, such as the Jones affidavit, on behalf of the plaintiffs for another month). On May 5, the Aldermen plaintiffs moved to voluntarily withdraw from the Aldermen-AAVR suit and have their claims dismissed without prejudice.

After having sought leave to withdraw from the Aldermen-AAVR suit, the Aldermen plaintiffs learned that the original counsel had responded to the City's summary judgment motion with only the Jones affidavit. On May 26, 1992, dissatisfied with this submission, the Aldermen plaintiffs sought leave to file out of time a twelve-page memorandum of law and two supporting affidavits in an attempt to bolster the Jones affidavit. This motion, made more than three months after the City's summary judgment motion, was denied by the district court without explanation.

## B. Miller Lawsuit

On April 27, 1992, with the City's summary judgment motion pending in the Aldermen-AAVR suit, the Aldermen plaintiffs filed a second lawsuit against the City challenging the St. Louis map. See Sharon Tyus, et al. v. Schoemehl, No. 4:92 CV 0000801 (E.D. Mo.

-4-

1992) (the <u>Miller</u> suit). In this suit, the plaintiffs raised the same claims as those raised in the Aldermen-<u>AAVR</u> suit: (1) the boundary lines as drawn fragment the black population, diluting black voting strength in violation of § 2 of the Voting Rights Act; and (2) the map was drawn with the discriminatory purpose of diluting black voting strength, in violation of the Fourteenth and Fifteenth Amendments and 42 U.S.C. § 1983. At this time, attorney Miner represented the plaintiffs in both suits. The Aldermen plaintiffs were joined in the <u>Miller</u> suit by Sterling Miller, Clarence Woodruff, and Paula Carter (an African-American Missouri state representative).

## C. Subsequent Orders in the Two Suits

On June 17, 1992, the district court in the Aldermen-<u>AAVR</u> suit granted the City's motion for summary judgment. The court determined both that expert Jones's memorandum failed to refute the City's assertion that the 1991 ward map provides African-American voters with proportional representation and that the Jones memorandum raised no triable issue with respect to the one person-one vote claim. Second, the court denied as moot the Aldermen plaintiffs' motion to withdraw from the Aldermen-<u>AAVR</u> suit.

Meanwhile, on June 6, 1992, the City moved to dismiss the <u>Miller</u> suit on the grounds that the Aldermen-<u>AAVR</u> suit was still pending before the district court and the Aldermen plaintiffs were plaintiffs in both suits. On June 20, the City renewed this motion, contending now that, given the grant of summary judgment to the City in the Aldermen-<u>AAVR</u> suit, the <u>Miller</u> suit was barred by res judicata and stare decisis.

On June 29, 1992, in the Aldermen-<u>AAVR</u> suit, the Aldermen plaintiffs, as well as the African American Voting Rights Legal Defense Fund, filed a Rule 59(e) motion to alter or amend the June 17 summary judgment and mootness orders. The parties in the <u>Miller</u>

-5-

suit agreed to stay briefing in that suit until the Rule 59(e) motion in the Aldermen-AAVR suit was ruled upon. The Rule 59(e) motion was denied on November 2, 1992. Upon the denial of the Rule 59(e) motion, the plaintiffs in the Miller suit moved for leave to file an amended complaint, dropping the Aldermen plaintiffs from the suit; adding two new plaintiffs, William L. Clay, Jr., an African-American Missouri state senator, and Kenneth Jones, an African-American St. Louis alderman; and expanding their factual allegations.

The district court converted the City's June 20 motion to dismiss the Miller suit into a summary judgment motion, and on March 2, 1993, the court granted this motion on claim preclusion grounds. The court first noted that the Aldermen plaintiffs, who were never allowed to withdraw from the Aldermen-AAVR suit, were clearly barred from raising their claims by claim preclusion. Further, although plaintiffs Miller, Woodruff, and Carter were not parties to the Aldermen-AAVR suit, they were nevertheless in privity with the plaintiffs in the Aldermen-AAVR suit under a theory of "virtual representation." According to the district court, these plaintiffs had been adequately represented by the plaintiffs in the Aldermen-AAVR suit and thus were bound by the ruling in that suit. Mem. & Order at 4 (Mar. 2, 1993). The court further denied as moot the motion to amend the complaint and add Jones and Clay, Jr. as plaintiffs. Id. at 8.

Miller, Woodruff, and Carter, as well as Jones, Jr. and Clay (the Miller plaintiffs), appealed the March 2, 1993 ruling. They sought to have the appeal consolidated with the AAVR appeal that was then currently pending before this Court. The consolidation motion was denied and this Court stayed proceedings in the Miller suit pending resolution of the AAVR appeal.

This Court summarily affirmed the granting of the summary judgment motion in the Aldermen-AAVR suit, see African American

<u>Voting Rights Legal Defense Fund, Inc. v. Villa</u>, 999 F.2d 1301 (8th Cir. 1993). The Supreme Court vacated this decision and remanded for reconsideration of other issues not pertinent here in light of <u>Johnson v. DeGrandy</u>, 114 S. Ct. 2776 (1994). <u>See</u> <u>Tyus v. Bosley</u>, 114 S. Ct. 2776 (1994). Upon remand, this Court again upheld the grant of summary judgment to the City. <u>See</u> <u>African American Voting Rights Legal Defense Fund, Inc. v. Villa</u>, 54 F.3d 1345 (8th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 913 (1996). Following this decision, this Court vacated the stay of proceedings in the <u>Miller</u> suit and directed the parties to brief the issues involving the grant of summary judgment in this case.[3]

## II.

## A.

Both suits raise identical dilution claims. Each contends the map boundaries violate § 2 of the Voting Rights Act by fragmenting black voters, thereby diluting black voting strength. Each also contends that the dilution of black voting strength violates the Fourteenth and Fifteenth Amendments.[4] At issue, then, is whether the <u>Miller</u> suit is barred by issue preclusion[5] because the claims

---

[3]We grant the appellants' motion to supplement the record to include the decision in <u>Shaw v. Reno</u>, 509 U.S. 630 (1993).

[4]The <u>Miller</u> suit also contends that the vote dilution violates 42 U.S.C. § 1983. In substance, however, this is not a separate claim. Rather, it is subsumed under the Voting Rights Act and Fourteenth and Fifteenth Amendment claims; this claim appears to us to be no more than "a cosmetic change" in pleading designed to "perpetuate litigation on the same basic issues." <u>Simmons v. O'Brien</u>, 77 F.3d 1093, 1097 (8th Cir. 1996).

[5]Regarding the interplay between issue preclusion and claim preclusion, the Supreme Court has noted:

> The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution

raised in that suit were litigated and necessarily decided by the Aldermen-<u>AAVR</u> suit.  We hold that it is.[6]

Under issue preclusion, once a court has decided an issue of fact or law necessary to its judgment, "the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."  Restatement (Second) of Judgments § 27 (1982); <u>see also</u> <u>Simmons v. O'Brien</u>, 77 F.3d 1093, 1095 (8th Cir. 1996).  Issue preclusion will also bar relitigation of an issue by one who, although not a party to the original suit, is in privity with a party to that suit.  <u>See</u> <u>Oldham v. Pritchett</u>, 599 F.2d 274, 276 n.1 (8th Cir. 1979).

In addition to the requirement that the party in the second suit sought to be precluded was a party, or in privity with a party, to the original lawsuit, <u>see</u> <u>id.</u>, there are four other prerequisites to the application of issue preclusion: (1) the issue

---

of preclusion concepts over the years.  These effects are referred to collectively by most commentators as the doctrine of "res judicata."  Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion."  Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.  Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.  Claim preclusion therefore encompasses the law of merger and bar.

<u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 77 n.1 (1984) (citations omitted).

[6]Although the district court applied claim preclusion when granting the City's motion for summary judgment, we believe that issue preclusion is the appropriate preclusion doctrine in this case.  We nevertheless may affirm the district court, for "we may affirm the district court's grant of summary judgment on any ground supported by record."  <u>White v. Moulder</u>, 30 F.3d 80, 82 (8th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 738 (1995).

sought to be precluded must be the same as that involved in a prior action; (2) the issue must have been actually litigated in the prior action; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.  See Farmland Indus. v. Morrison-Quirk Grain Corp., 987 F.2d 1335, 1339 (8th Cir. 1993).  The parties do not contest that the last four requirements for preclusion are met in this case.  The sole issue, therefore, is whether the Miller plaintiffs are in privity with the Aldermen plaintiffs, so that the Miller plaintiffs should be bound by the result in the Aldermen-AAVR suit.

**B.**

Preclusion is rooted in concerns of judicial economy.  As we have noted, "[i]n this era of overcrowded dockets the courts have a positive duty to restrict needless relitigation of issues." Gerrard v. Larsen, 517 F.2d 1127, 1134 (8th Cir. 1975); see also Montana v. United States, 440 U.S. 147, 153 (1979) (preclusion doctrines "conserve[] judicial resources").  Additionally, the preclusion doctrines protect defendants, by relieving them of "the expense and vexation attending multiple lawsuits."  United States v. Gurley, 43 F.3d 1188, 1197 (8th Cir. 1994) (quoting Montana, 440 U.S. at 153), cert. denied, 116 S. Ct. 73 (1995).

However, due process concerns are present when the party sought to be precluded was not an actual party in the first lawsuit.  Because preclusion based on privity is an exception to the "deep-rooted historic tradition that everyone should have his own day in court," Richards v. Jefferson County, Ala., 116 S. Ct. 1761, 1766 (1996) (citation omitted), courts must ensure that the relationship between the party to the original suit and the party sought to be precluded in the later suit is sufficiently close to justify preclusion.  Thus, "the due process clauses prevent preclusion when the relationship between the party and non-party

-9-

becomes too attenuated."  Southwest Airlines Co. v. Texas Int'l Airlines, 546 F.2d 84, 95 (5th Cir.), cert. denied, 434 U.S. 832 (1977).

There are three generally recognized categories of nonparties who will be considered in privity with a party to the prior action and who will be bound by a prior adjudication: (1) a nonparty who controls the original action; (2) a successor-in-interest to a prior party; and (3) a nonparty whose interests were adequately represented by a party to the original action.  See generally 18 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction §§ 4451, 4454-57, and 4462 (1981 & Supp. 1990).  This case focuses on the third category.

Preclusion based on adequate representation, otherwise known as "virtual representation," was given its clearest statement in AeroJet-General Corp. v. Askew, 511 F.2d 710 (5th Cir.), cert. denied, 423 U.S. 908 (1975).  In that case, the court noted that

> [u]nder the federal law of res judicata, a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative.

Id. at 719.  Although this principle is generally accepted, courts are sharply divided on how to implement this strand of issue preclusion.

Some courts permit a wide use of virtual representation, inquiring whether there exists a substantial relationship between the party and nonparty, such that the party adequately represented the interests of the nonparty.  See, e.g., NAACP v. Hunt, 891 F.2d 1555 (11th Cir. 1990).  Because of the fact-intensive nature of these inquiries, there is no clear test that can be employed to determine if virtual representation is appropriate.  It is evident, however, that because virtual representation rests on the notion

-10-

that it is fair to deprive a nonparty of his day in court, "virtual representation has a pronounced equitable dimension." Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 761 (1st Cir. 1994). A nonparty will be barred from bringing his claim only when "the balance of the relevant equities tips in favor of preclusion." Id.

Other courts would permit a nonparty to be bound by a prior judgment under a theory of virtual representation only in very limited, technical situations. For example, in Pollard v. Cockrell, 578 F.2d 1002 (5th Cir. 1978), the court noted that "[v]irtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues." Id. at 1008; see also Klugh v. United States, 818 F.2d 294, 300 (4th Cir. 1987) (same). Examples of such a relationship would be "'estate beneficiaries bound by administrators, presidents and sole stockholders by their companies, parent corporations by their subsidiaries, and a trust beneficiary by the trustee.'" Pollard, 578 F.2d at 1008-09 (quoting Southwest Airlines Co., 546 F.2d at 97). Under this view, virtual representation is little more than the doctrine of preclusion based on representation that has historically been accepted by courts.

We agree with those courts that give wider use to virtual representation. This liberal use better accommodates the competing considerations of judicial economy and due process. Although we are cognizant of the concerns underlying the Pollard decision--that broad use of this doctrine will completely eviscerate the notion that a party is entitled to his day in court--we believe that these concerns are better addressed through a careful application of the doctrine to the facts in a given case than by artificially limiting the scope of the doctrine.

This conclusion is not altered by the recent Supreme Court

-11-

decision in <u>Richards</u>, <u>supra</u>. In <u>Richards</u>, the Court permitted a group of taxpayers to challenge a municipal tax as an unconstitutional deprivation of property, even though an earlier group of taxpayers had already litigated this issue and lost. The Court began by reaffirming the general rule that "'one is not bound by a judgment <u>in personam</u> in a litigation in which he is not designated as a party . . . .'" <u>Richards</u>, 116 S. Ct. at 1765-66 (quoting <u>Hansberry v. Lee</u>, 311 U.S. 32, 40 (1940)). Because the two sets of plaintiffs were "mere 'strangers' to one another," <u>id.</u> at 1768, the Court concluded that the plaintiffs to the earlier suit did not provide "representation sufficient to make up for the fact that [the second set of plaintiffs] neither participated in, nor had the opportunity to participate in, the [earlier] action." <u>Id.</u> (citations omitted).

However, the Court did note one important exception to the general rule: a party to the second case will be bound by the result of an earlier case to which it was not a party "when it can be said that there is 'privity' between a party to the second case and a party who is bound by an earlier judgment." <u>Id.</u> at 1766. Although the Court provided some examples of what could constitute privity, it did not offer a general definition of that term. Rather, the Court acknowledged that "the term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term." <u>Id.</u>

Virtual representation falls squarely within this exception. A court will apply virtual representation only when it finds the existence of some special relationship between the parties justifying preclusion. In essence, this is a finding that the two parties are in privity. <u>See</u> <u>Gerrard</u>, 517 F.2d at 1134 ("Privity . . . is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata.") (quoting <u>Bruszewski v. United States</u>, 181 F.2d 419, 423 (3d Cir.) (Goodrich, J.,

-12-

concurring), cert. denied, 340 U.S. 865 (1950)). When, as in Richards, the two parties are strangers to each other, then virtual representation would not be appropriate. However, where there is a special relationship between the parties, determined after analyzing the factors listed below, then the parties are in privity, and Richards is simply inapposite.

## c.

Due to the equitable and fact-intensive nature of virtual representation, there is no clear test for determining the applicability of the doctrine. There are, however, several guiding principles. First, identity of interests between the two parties is necessary, though not alone sufficient. See Mann v. City of Albany, Ga., 883 F.2d 999, 1003 (11th Cir. 1989). Other factors to be considered "include a close relationship between the prior and present parties; participation in the prior litigation; apparent acquiescence; and whether the present party deliberately maneuvered to avoid the effects of the first action." Petit v. City of Chicago, 766 F. Supp. 607, 612 (N.D. Ill. 1991) (citing 18 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 4457).

Another factor to consider is adequacy of representation, Gonzalez, 27 F.3d at 762, which is best viewed in terms of incentive to litigate.[7] That is, one party "adequately represents"

---

[7]In concluding that adequacy of representation refers to incentive to litigate rather than to actual trial strategy and possible trial errors, as some commentators have argued, see, e.g., 18 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 4457, we are influenced by two observations. First, in applying virtual representation, courts must perform a preliminary relationship inquiry: whether one party's interests are so aligned with those of another that one party can be considered a proxy for the other party. While incentive to litigate may have some bearing on whether the two parties' interests are aligned, considerations of trial strategy and

-13-

the interests of another when the interests of the two parties are very closely aligned and the first party had a strong incentive to protect the interests of the second party.

Finally, the nature of the issue raised--whether a public law issue or private law issue--is important.  Although virtual representation may be used in the private law context, its use is particularly appropriate for public law issues.  As the Supreme Court recently noted, when a case challenges a "public action that has only an indirect impact on [a party's] interests," Richards, 116 S. Ct. at 1768, due process concerns are lessened.  In this situation, courts have "wide latitude to establish procedures . . . to limit the number of judicial proceedings . . . ."  Id.

Further, we note that in public law cases, the number of plaintiffs with standing is potentially limitless.  If parties were allowed to continually raise issues already decided, public law

---

possible trial errors, because they have little bearing on the relationship between the parties, are external to this inquiry.

Second, we note that "in civil litigation, the sins of the lawyer routinely are visited upon the client."  Gonzalez, 27 F.3d at 762 n.12.  As such,

> [w]e do not understand why a nonparty who comes within the doctrinal framework for virtual representation--a framework in which party and nonparty share identical interests, and that provides for notice and a weighing of equitable considerations--should be treated differently from a party in this regard.

Id.  If party A is a proxy for party B, then we should hold party B to the same standards as we would hold party A.  To not apply virtual representation when counsel is deficient would encourage fence-sitting: the nonparty will benefit if the party plaintiff wins, but if the party plaintiff loses due to counsel's deficient performance, the nonparty could refile suit, thereby tactically maneuvering around counsel's deficient performance.  Thus, applying preclusion in this situation not only reinforces the goal of judicial economy, but it also prevents an end-run around the rule that parties are responsible for the acts of their counsel.

-14-

claims "would assume immortality." <u>Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.</u>, 750 F.2d 731, 741 (9th Cir. 1984) (applying virtual representation to preclude plaintiff from raising school desegregation claim), <u>cert. denied</u>, 474 U.S. 919 (1985). Concerns of judicial economy and cost to defendants, while present in every suit, are particularly important in this context. There is another important consideration: in the public law context, if the plaintiff wins, by definition everyone benefits. Holding preclusion inapplicable in this context would encourage fence-sitting, because nonparties would benefit if the plaintiffs were successful but would not be penalized if the plaintiffs lost.

**D.**

We conclude that issue preclusion based on virtual representation is appropriate in this case. In reaching this conclusion, we are persuaded by the reasoning of <u>Petit</u>, <u>supra</u>. In <u>Petit</u>, the city of Chicago, in response to a suit brought by the United States Department of Justice alleging discrimination in hiring and promoting blacks, Hispanics, and women within the Chicago Police Department, developed a new sergeant's exam, consisting of a written test, oral examination, and performance evaluation. <u>See</u> <u>Petit</u>, 766 F. Supp. at 609. Many white applicants for sergeant sought to intervene in the continuing suit, alleging that the city manipulated the test scores in favor of minority applicants. Intervention was permitted, and subsequently many of the intervenors' claims were dismissed with prejudice. <u>Id.</u> at 610.

Having failed to obtain redress, many of the intervenors, along with additional white police officers, filed the action in <u>Petit</u>, raising the same claims previously dismissed. The court held that res judicata barred all claims, including those of plaintiffs who had not intervened in the earlier suit. <u>Id.</u> at 612-13.

-15-

In applying the virtual representation doctrine, the court relied on several factors. The court first mentioned that the claims raised in the two suits were identical, and that the same counsel argued both cases. More significantly, the court took notice of the tactical maneuvering taking place:

> The intervenors cannot avoid an express federal court order that dismissed their claims with prejudice by adding the non-intervenors and refiling this claim. A finding of privity comports with the policy behind res judicata. If the intervenors succeeded originally, all of the white police officers would have benefitted--even the non-intervenors. On the other hand, if the intervenors lost, which they did, the non-intervenors cannot obtain a second determination by bringing this separate action. Such an action would encourage "fence-sitting" and discourage the principles and policies the doctrine of res judicata was designed to promote.

Id. at 613. Given the close alignment of interests between the first suit intervenors and nonintervenors, and the tactical maneuvering taking place, the district court held that the nonintervenors had already taken their bite at the litigative apple.

The facts in the present case are similar to those in Petit. First, both the Aldermen-AAVR suit and the Miller suit raise similar claims, and there was an overlap in plaintiffs between the two suits. Further, attorney Miner was plaintiffs' counsel in the Miller suit, and he was substituted as counsel in the Aldermen-AAVR suit on April 24, 1992, well before the City's summary judgment motion was granted. These factors suggest, at least partly, that a close relationship exists between the prior and present parties. See id. at 612.

We further note that plaintiff Carter, potential plaintiffs Clay Jr. and Jones, and all of the Aldermen plaintiffs were elected African-American officials. They all shared the same concern: the

-16-

dilution of the African-American vote in St. Louis. This organizational commonality suggests a special commonality of interests. See Hunt, 891 F.2d at 1561 (where plaintiff in first suit and plaintiffs in second suit were state legislators and members of the NAACP, this was factor demonstrating commonality of interest).

More importantly, as in Petit, there is tactical maneuvering taking place in Miller. In an effort to circumvent trial strategy disagreements, the Aldermen plaintiffs filed the Miller suit, simply adding new plaintiffs. This second lawsuit directly contravenes the policies supporting the preclusion doctrines. A victory by the Aldermen plaintiffs in the Aldermen-AAVR suit would have directly benefited the Miller plaintiffs. On the other hand, without virtual representation, a loss by the Aldermen plaintiffs would cause no harm to the Miller plaintiffs. In such a situation, there is no incentive to intervene. Quite the contrary: holding preclusion inapplicable assures that a party would not intervene, for it would allow various members of a coordinated group to bring separate lawsuits in the hope that one member of the group would eventually be successful, benefiting the entire group. This entails a significant cost to the judicial system and "discourage[s] the principles and polices the doctrine of res judicata was designed to promote." Id. at 613.

Finally, that the Miller case raises an issue of public law is another factor in favor of preclusion. The Miller plaintiffs do not allege that they have been denied the individual right to vote. Rather, they allege that the strength of the black vote in general has been diluted. Because the plaintiffs do not allege that they "have a different private right not shared in common with the public," Stromberg v. Board of Educ. of Bratenahl, 413 N.E.2d 1184, 1186 (Ohio 1980) (cited approvingly by Richards, 116 S. Ct. at 1768), the plaintiffs raise an issue of public law, and thus the due process concerns attendant with a broad application of

preclusion are lessened.  See Richards, 116 S. Ct. at 1768.
Further, given the public nature of this case, if we held
preclusion inapplicable, this case could "assume immortality," Los
Angeles Branch NAACP, 750 F.2d at 741, and fence-sitting would be
encouraged.  See supra, slip op. at 15.

The Miller plaintiffs contend that preclusion is inappropriate
because the Aldermen plaintiffs did not adequately represent their
interests at the first trial.  They note that counsel in the
Aldermen-AAVR suit failed to file a formal motion in opposition to
the summary judgment motion.  Plaintiffs argue that absent an
effective and diligent prosecution of the case at the first trial,
virtual representation is inapplicable.  We disagree.

As noted above, adequate representation is best viewed in
terms of incentive to litigate.  See supra note 7.  The Aldermen
plaintiffs had every incentive and opportunity to fully litigate
the claims raised in the Aldermen-AAVR suit.  No more is required.
See Simmons, 77 F.3d at 1097 n.4 (when assessing whether party had
full opportunity and incentive to litigate case, there is no
further requirement that plaintiff actually take advantage of that
opportunity).

Given the factors counseling in favor of preclusion, we
determine that the Aldermen plaintiffs adequately represented the
interests of the Miller plaintiffs, and thus the two sets of
plaintiffs are in privity.  The Miller plaintiffs have vicariously
had their day in court and their "one bite at the apple."  As such,
they are precluded from litigating those issues that were decided
by the Aldermen-AAVR suit.[8]

---

[8]The Miller plaintiffs contend that preclusion is
inapplicable in this case given the changes in voting rights
jurisprudence occasioned by Shaw v. Reno, 509 U.S. 630 (1993),
and Miller v. Johnson, 115 S. Ct. 2475 (1995), both decided after
the filing of the complaint in the Aldermen-AAVR suit.

We conclude that the Aldermen plaintiffs adequately represented the interests of the Miller plaintiffs and thus acted as their virtual representatives during the Aldermen-AAVR suit. As such, the Miller plaintiffs are precluded from relitigating those issues that were litigated in the Aldermen-AAVR suit. We affirm the district court's grant of summary judgment.

HENLEY, Senior Circuit Judge, concurring in the result.

The panel's opinion is very well written and seems to make the best of the arguments in favor of finding preclusion here. And, on balance, I agree with the panel's result: that the present case is barred by the previous litigation. Nevertheless, the case is a close one and I am uncomfortable with some of the panel's language. Accordingly, this brief statement of my reasons for concurring only in the result is tendered.

In general, I have some concern about how far we should go in extending preclusive effect to cases of so-called "virtual representation." As the panel points out, due process considerations provide an outer limit on the scope of preclusion. It is one thing to hold that a party in privity under principles of contract or property law should be bound by the results of prior

---

Although some courts have declined to apply preclusion principles given an intervening change in voting rights law, see, e.g., Parnell v. Rapides Parish Sch. Bd., 563 F.2d 180, 185 (5th Cir. 1977), cert. denied, 438 U.S. 915 (1978), in this case there was no intervening legal change, as argued by the Miller plaintiffs. Shaw was decided on June 28, 1993. The first AAVR appeal was not decided until August 4, 1993, and the second appeal, following remand, was not handed down until nearly two years later, on May 12, 1995. Thus, any change in law occasioned by the Shaw opinion was fully available to the appellants in AAVR. As for Johnson, even though it was handed down after the appeal in AAVR, it is an extension of Shaw and thus does not constitute a sufficient intervening change in the law.

-19-

litigation. It is quite another matter, however, to say that strangers to the prior litigation should be bound solely because they would raise the same issue or favor the same legal position.

More specifically, in this case, I believe it is a close question whether our result is fully consistent with the language and spirit of the Supreme Court's decision this term in Richards v. Jefferson County, Alabama, 116 S. Ct. 1761 (1996). In Richards, the Court held that a suit by persons employed in Jefferson County challenging the constitutionality of an occupation tax was not barred by principles of res judicata even though a prior suit (by the City of Birmingham and several individual taxpayers) had upheld the constitutionality of the same tax. The Court said that the taxpayers in the second suit could not be bound by the decision on the merits in the first suit, because they received neither "notice of, nor sufficient representation in" the prior litigation. 116 S. Ct. at 1769.

The panel opinion does not directly address the issue of "notice" here and concludes that all that is necessary to satisfy the "sufficient representation" prong of Richards is that the plaintiffs in the first suit had the "incentive" to raise the same issues the parties in the second suit would raise. However, the Supreme Court's opinion appears to require something more than just incentive: "a prior proceeding, to have binding effect on absent parties, would at least have to be 'so devised and applied as to insure . . . that the litigation is so conducted as to insure the full and fair consideration of the common issue.'" Richards, 116 S. Ct. at 1767, quoting, Hansberry v. Lee, 311 U.S. 32, 43 (1940) (emphasis added).

Despite these misgivings about the proposition of "virtual representation" preclusion in general and some of the language of the panel's opinion, I believe that on the facts here, the requirements of "notice" and "sufficient representation" were

-20-

satisfied. In particular, the plaintiffs in the second suit clearly were on notice of the first litigation, because some of them had also been plaintiffs in the prior suit. Moreover, the same counsel represented plaintiffs in both actions. I believe that this identity of counsel and (at least some of the) plaintiffs also suggests that the "sufficient representation" requirement of due process was met. In addition, as the panel opinion points out, it appears that the principal reason for filing the second suit was to evade the judgment in the first suit.

It is noted, however, that the first suit was not filed as a class action, that the litigation was disposed of on motion for summary judgment, and that plaintiffs there filed only one affidavit and no brief opposing summary judgment. On these facts, it is not at all clear to me that under <u>Richards</u> a new plaintiff or group of plaintiffs -- not on notice that their rights would be litigated in the first suit nor adequately represented there -- would be barred from challenging the St. Louis districting plan even though there was a judgment on the merits in the first suit.

For the reasons stated, I concur in the result.

A true copy.

    Attest:

       CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.