84 F.3d 296
 70 Fair Empl.Prac.Cas. (BNA) 1442
 John GRAHEK, John Swenson, and Brent Nagle, Appellants,
v.
The CITY OF ST. PAUL, MINNESOTA; William Finney, Chief of
Police; and Mark Robertson, Director of
Personnel, Appellees.
 No. 95-2399.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 14, 1995.
Decided May 23, 1996.
 
 1
 Mark W. Gehan, St. Paul, Minnesota, argued for appellants.
 
 
 2
 Gerald Thomas Hendrickson, St. Paul, Minnesota, argued for appellees (Timothy E. Marx, City Attorney for St. Paul, Minnesota, on the brief).
 
 
 3
 Before BOWMAN and LOKEN, Circuit Judges, and WOLLE*, District Judge.
 
 
 4
 WOLLE, District Judge.
 
 
 5
 John Grahek, John Swenson, and Brent Nagle, three white males, applied to become police officers for the City of St. Paul in 1992. Their gender and race discrimination complaint alleges the defendant city, its police chief, and its personnel director violated their rights under federal and state law by using hiring procedures that allegedly favored women and minority applicants. On the threshold issue of standing, the district court[1] granted summary judgment for defendants because no plaintiff had shown injury in fact. In this appeal, the plaintiffs do not challenge the facts on which the district court relied, but they contend the district court erred in applying principles of law governing standing. We agree with the well-reasoned decision of the district court and affirm.
 
 I.
 
 6
 Defendants raised the standing issue in their motion for summary judgment. The plaintiffs[2] resisted and filed a cross-motion for partial summary judgment on the merits of their claims, thereby clarifying their theory for recovery and the relief they were seeking.
 
 
 7
 General principles governing standing are well settled. The burden is on a plaintiff seeking to invoke the federal judicial power to demonstrate more than a generalized grievance against allegedly illegal government conduct.
 
 
 8
 [T]he irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.... Second, there must be a causal connection between the injury and the conduct complained of... .... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
 
 
 9
 Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations, footnote, and internal quotation marks omitted), quoted in Northeastern Florida Gen. Contractors v. City of Jacksonville, 508 U.S. 656, 663-64, 113 S.Ct. 2297, 2302, 124 L.Ed.2d 586 (1993).
 
 
 10
 Plaintiffs acknowledge they must satisfy these general requirements for standing. They contend they met their burden by demonstrating that defendants' hiring methods allowed women and minority applicants greater opportunity than white male applicants to be interviewed and then hired to be police officers.
 
 II.
 
 11
 Plaintiffs do not dispute the facts relied on by the district court. St. Paul Civil Service Rule 8 governed the filling of vacancies on the police force. First, all applicants were required to pass a civil service examination designed to measure job performance. When the police department needed to fill vacancies, the department was required to request a certified list of qualified candidates from the city personnel office. That office then certified a list of candidates who had passed the civil service examination and an investigative background check. In placing names on the certified list submitted to the police department, Rule 8 required the personnel office to draw names of qualified applicants from three separate groups: current city employees who had passed the test; the highest ranked non-city employee candidates regardless of gender, race, or disability; and the highest ranked protected-class applicants. The applicants comprising each group were ranked separately by test score. Only the highest ranked persons in the three groups were placed on the list certified to the police department by the personnel office.
 
 
 12
 Each police department request for a certified list of police officer applicants identified a specific number of vacancies. Each certified list was required by a so-called "Rule of 3" to have the requested number of vacancies plus two. The chief of police, acting for the department, would interview the persons on the certified eligible list and could hire any of those persons.
 
 
 13
 Four certified lists submitted to the police department in 1992 and 1993 spawned this litigation. In the autumn of 1992, Grahek, Swenson, and Nagle applied to become police officers and passed the civil service examination. Compared with all applicants, test scores, Grahek ranked 38, Swenson ranked 42, and Nagle ranked 65. A list on December 16, 1992, included nine persons to fill seven vacancies; lists submitted on March 17, 1993, included twenty-two applicants to fill twenty vacancies and seven applicants to fill five vacancies; and a list submitted on November 18, 1993, included twenty-two applicants to fill twenty vacancies. None of the three plaintiffs was on the lists certified on December 16 and March 17. Before the personnel office presented the certified list on November 18, Swenson voluntarily withdrew his application. Grahek and Nagle were included on the list certified to the police department on November 18, 1993. They were interviewed and both were offered positions as police officers. Grahek accepted, but Nagle did not.
 
 
 14
 Having made these factual determinations that are not here challenged, the district court determined that none of the three plaintiffs would have been on the lists certified on December 16 and March 17 even if the protected-class applicants had not been used to fill those certified lists. The district court clearly explained how Rule 8 and the Rule of 3 would have kept Grahek, Swenson, and Nagle from qualifying for the certified lists even if there had been no separate group of protected-class applicants. The district court held:
 
 
 15
 Clearly, neither Grahek, Swenson nor Nagle would have been certified for interview under the Rule of 3 any earlier than each was in fact certified for interview under the Rule of 3 with expanded certification. Their allegation that they were not interviewed sooner "because they were white males" is erroneous. Therefore, neither Grahek, Swenson, nor Nagle was injured by expanded certification, and none have standing to bring this claim.
 
 III.
 
 16
 Plaintiffs contend they were injured because they were excluded from the protected-class group of applicants, one of the three ranked groups used to fill each certified list. They point out that the hiring process of Rule 8, with expanded certification for protected-class applicants, allowed defendants to interview and hire women and minority applicants who had lower examination scores than the three plaintiffs. They therefore challenge expanded certification because it required white male applicants to compete with all candidates, while members of protected classes competed only against other persons within their own class.
 
 
 17
 Plaintiffs' arguments miss the mark. Even if no persons from the separate group of protected-class applicants had been included in the certified lists submitted on December 16, 1992, and March 17, 1993, none of the three plaintiffs would have been placed on those lists. Grahek, Swenson, and Nagle did not have a ranking adversely affected by the protected-class group of applicants on any of the dates here in question when certified lists were submitted to the police department.
 
 
 18
 Plaintiffs argue that the district court decision is contrary to two decisions of the United States Supreme Court: Regents of University of California v. Bakke, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978); and Northeastern Florida Gen. Contractors v. City of Jacksonville, 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). In Bakke, a white male applicant to the medical school at the University of California at Davis had standing to challenge an affirmative action program that reserved for minority applicants 16 of 100 places in an entering class, even though Bakke could not demonstrate he would have been admitted in the absence of the program. In Northeastern Florida Contractors, a general contractor's association was allowed to challenge a minority set aside program even though it could not prove any member of the association would have been awarded a contract in the absence of the set-aside program. Plaintiffs emphasize the following language the Court wrote in Northeastern Florida Contractors:
 
 
 19
 Singly and collectively, these cases stand for the following proposition: When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.
 
 
 20
 Id. 508 U.S. at 666, 113 S.Ct. at 2303.
 
 
 21
 Plaintiffs, reliance on those decisions is misplaced. The City of St. Paul process for hiring police officers did not set aside a particular number of positions for protected-class applicants. The expanded opportunity for interviews for protected class members did not reserve positions for that class of applicants. Fundamentally, Grahek, Swenson, and Nagle were placed on a certified list as soon as they would have been placed on the list without expanded certification for protected-class applicants.
 
 
 22
 The district court decision is consistent with United States v. Hays, --- U.S. ----, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). In reversing a trial court ruling that found standing for persons challenging boundaries of newly mapped congressional districts in Louisiana, the Court explained that standing was dependent on a showing of direct injury to a person denied equal protection by the redistricting plan. The Court wrote:
 
 
 23
 The fact that Act I affects all Louisiana voters by classifying each of them as a member of a particular congressional district does not mean--even if Act I inflicts race-based injury on some Louisiana voters--that every Louisiana voter has standing to challenge Act I as a racial classification. only those citizens able to allege injury "as a direct result of having personally been denied equal treatment," may bring such a challenge, and citizens who do so carry the burden of proving their standing, as well as their case on the merits.
 
 
 24
 Id. --- U.S. at ----, 115 S.Ct. at 2437 (citations omitted).
 
 
 25
 The district court properly relied on a case we decided in 1991 that is strikingly similar on its facts. In Donaghy v. City of Omaha, 933 F.2d 1448 (8th Cir.1991), cert. denied, 502 U.S. 1059, 112 S.Ct. 938, 117 L.Ed.2d 109 (1992), the plaintiff contended he was injured by a race conscious employment decision of the City of Omaha, because the city did not strictly follow rank order in the referral and promotion process. Donaghy, like the plaintiffs in this case, would not have been referred for the openings for which he applied even if the police chief had not based the decision on whom to interview on an affirmative action plan imposed by a federal court order that gave preference to minority officers in selection for promotion. Donaghy is consistent with Hays in requiring that a plaintiff show injury in fact, not a conjectural or hypothetical reduced opportunity resulting from implementation of a hiring plan.
 
 
 26
 The district court correctly concluded, on the facts in the summary judgment record, that no plaintiff had satisfied standing requirements for challenging the process by which defendants selected law enforcement officers.
 
 
 27
 AFFIRMED.
 
 
 
 *
 The HONORABLE CHARLES R. WOLLE, Chief United States District Judge for the Southern District of Iowa, sitting by designation
 
 
 [1]
 The Honorable Paul Magnuson, Chief Judge, United States District Court for the District of Minnesota
 
 
 [2]
 The complaint was jointly filed by the three applicants for police officer positions who are appellants and by the St. Paul Police Federation and its president. The district court also granted summary judgment against the federation and its president for lack of standing. They did not appeal