Robert PETIT, et al., Plaintiffs,

v.

CITY OF CHICAGO, Defendant.

No. 90 C 4984.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 11, 1998.

Kimberly A. Sutherland, Chicago, IL, for Plaintiffs.

J. Paula Roderick, Earl L. Neal & Associates, Mary Catherine Cox, Michael A. Forti, Adrienne Hiegel, City of Chicago, Law Dept., Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

This lawsuit concerns the Chicago, Illinois Police Department's 1985–1988 sergeant promotional examination (the "1985–88 examination") that produced a 1988 eligibility list used between December 1988 and September 1991 in promoting 458 patrol officers to the rank of sergeant. The plaintiffs in this case are 326 individual officers and Lodge 7 of the Fraternal Order of Police (the "FOP"),[1] a union representing Chicago police officers below the rank of sergeant. The individual plaintiffs claim that defendant City of Chicago[2] committed racial or national origin discrimination in violation of 42 U.S.C. § 1983 by adjusting scores on the 1985–88 examination based on the race of the test taker ("racial standardization"). The adjustments favored African–Americans and Hispanics. All or most of the individual plaintiffs are non-Hispanic Whites. The individual plaintiffs, as well as the FOP, further complain that defendant discriminated by promoting Hispanics and women[3] out of the order in which they were ranked based on the racially standardized test.[4]

Defendant moves for partial summary judgment seeking to (a) dismiss certain plaintiffs; (b) dismiss all the racial standardization claims; and (c) dismiss any remaining claims for injunctive relief. Defendant argues that 240 of the individual plaintiffs lack

---

1. The FOP originally filed a separate lawsuit that was consolidated with this lawsuit. The FOP seeks to represent its organizational interests. To the extent it can represent the individual interests of any of its members, it seeks to represent only those members who are not individually joined in this suit. The 326 individual plaintiffs are represented by their own counsel, not counsel provided by the FOP.

2. Other defendants were previously dismissed. See Petit v. City of Chicago, 766 F.Supp. 607, 614–16 (N.D.Ill.1991) ("Petit I").

3. For brevity in writing, race or racial will be used generically to refer to the race, national origin, and gender issues involved in this case.

4. The claims of the individual plaintiffs are limited to § 1983. See Petit I, 766 F.Supp. at 613. The FOP's Second Amended Complaint cites both § 1983 and 42 U.S.C. § 1981.

standing because they would not have been among the 458 officers promoted to sergeant even if racial standardization had not been applied. Also, defendant argues four individuals were not affected by racial standardization because they were promoted at the same time as they would have been even if there had · been no racial standardization. As to the other 82 plaintiffs whose promotions were affected by racial standardization, defendant contends their claims fail because the undisputed evidence shows that the City had a permissible basis for applying racial standardization. The City contends that it was justified in applying racial standardization because, otherwise, use of the 1985–88 examination results would have had an adverse impact on African–Americans and Hispanics, thereby violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* If defendant's motion is granted in its entirety, there will still be 42 plaintiffs who have pending claims based on being affected by the out-of-rank-order promotions of Hispanics and women.

As to the FOP, defendant contends that the FOP lacks standing to bring monetary claims for individual members' denial of promotion. The FOP also prays for declaratory and injunctive relief, including that those who received promotions because of racial standardization have their promotions declared null and void. As to voiding the promotions, defendant contends that such relief is only permitted in limited circumstances that are not present in this case. As to any other declaratory or injunctive relief, defendant argues that such relief is moot because the City no longer engages in such preferential, out-of-rank-order promotions. For the same reason, the City argues that the individual plaintiffs' prayer for injunctive relief based on out-of-rank-order promotions is moot. As to the individual plaintiffs' prayer for injunctive relief based on racial standardization, the City argues that such relief is moot because the 1985–88 examination results have not been used since 1991, subsequent examinations were not adjusted for racial standardization, and there is no evidence that the City is likely to use racial standardization in the future.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Valance v. Wisel*, 110 F.3d 1269, 1274 (7th Cir.1997); *Patel v. Allstate Insurance Co.*, 105 F.3d 365, 367 (7th Cir.1997). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). The nonmovants, however, must make a showing sufficient to establish any essential element for which they will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir.1997). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See NLFC, Inc. v. Devcom Mid–America, Inc.*, 45 F.3d 231, 236 (7th Cir.), *cert. denied*, 515 U.S. 1104, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995); *Covalt v. Carey Canada, Inc.*, 950 F.2d 481, 485 (7th Cir.1991); *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 476–77 (7th Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). As the Seventh Circuit has summarized:

The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *id.* at 325, 106 S.Ct. 2548 ("the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support

the nonmoving party's case"). Then, with respect to issues that the non-moving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992).

Pursuant to Local Rule 12(M), defendant provided a statement of facts as to which it contends there is no genuine dispute. To the extent plaintiffs contend any of these facts are disputed, Local Rule 12(N) requires that they provide a paragraph-by-paragraph response to defendant's Rule 12(M) Statement with specific references to the affidavits, parts of the record, or other supporting materials that they contend show there is a genuine factual dispute. All material facts set forth in defendant's 12(M) Statement will be deemed to be admitted unless properly controverted by plaintiffs. N.D. Ill. Loc. R. 12(N)(3)(b); *Karazanos v. Madison Two Associates,* 147 F.3d 624, 626 (7th Cir.1998); *Dade v. Sherwin–Williams Co.,* 128 F.3d 1135, 1139–40 (7th Cir.1997).

The motion against the individual plaintiffs will be considered first. Resolving all genuine factual disputes in plaintiffs' favor and drawing all reasonable inferences from admissible evidence in plaintiffs' favor, the facts assumed to be true for purposes of summary judgment are as follows. Beginning in 1970, various lawsuits have been filed challenging the procedures for promoting Chicago police officers as being discriminatory. The 1973 and 1978–79 sergeants examinations were found to be discriminatory and affirmative relief was granted to benefit African–Americans, Hispanics, and women, including the imposition of some quotas.

█ In light of this past history, the City developed the 1985–88 examination. Claims regarding the 1985–88 examination were raised in *United States v. City of Chicago,* No. 73 C 2080 (N.D.Ill.) ("*City of Chicago*"). In *City of Chicago,* the City moved to impose a quota that would make adjustments favoring Hispanics and women, but that motion was denied. *See Petit I,* 766 F.Supp. at 609. A number of the plaintiffs in the present case intervened in *City of Chicago.* The intervenors' claims were subsequently dismissed, some with prejudice and some without prejudice. It was previously held that this dismissal has a preclusive effect on all the individual plaintiffs in the present case. *Petit I,* 766 F.Supp. at 610–13. Claims dismissed with prejudice in *City of Chicago* may not be litigated in the case *sub judice.* Plaintiffs are not precluded from challenging the racial standardization of raw scores; they are precluded from challenging both a scoring method that bunches scores in a narrow range and the elimination of questions from use in the final scoring.[5]

The City developed an examination that consisted of four parts for which it was determined the following weights would be applied: (a) written multiple choice (28%); (b) written short answer (29%); (c) oral examination (40%); and (d) performance evalua-

---

5. *Petit I,* 766 F.Supp. at 612–13 relies upon *United States v. City of Chicago,* 752 F.Supp. 252 (N.D.Ill.1990), *aff'd,* 951 F.2d 352 (7th Cir.1991), *cert. denied,* 504 U.S. 974, 112 S.Ct. 2943, 119 L.Ed.2d 567 (1992), for a statement as to what claims were dismissed with or without prejudice.

That opinion expressly states that it adopts the December 12, 1989 report and recommendation of the magistrate judge. *Id.* at 254–55. The report and recommendation of the magistrate judge is provided as Exhibit 14 to Defendant's motion. *See* Exh. 14 at 7.

tions (3%). The points assigned to each part added up to a total possible score of 100 points. The multiple choice examination was administered in 1985 and the short answer and oral examinations in 1988. All patrol officers who had completed their probationary period by the time the examinations began were eligible. 3416 officers took all parts of the examination, 2274 Whites (66.6%), 931 African–Americans (27.2%), and 192 Hispanics (5.6%). The City anticipated promoting approximately 500 patrol officers to sergeant.

Adjustments were made to standardize the grading of the different raters who scored the short answer and oral examination parts.[6] This aspect of the standardization was not based on the rater's race. As to the short answer examination, one standardization was performed to adjust for raters and a separate standardization was performed to adjust for the race of the applicant. For the oral examination, though, a single standardization was performed taking into account both the rater and the race of the applicant. For present purposes, the City has recalculated, in separate steps, the oral examination rater standardization and the standardization based on the applicant's race. Thus, it can be determined what the rank order of applicants would have been had no racial standardization been performed.

Plaintiffs present no evidence raising a genuine factual dispute as to who the top 458 candidates would have been had no racial standardization been employed.[7] 240 of the individual plaintiffs are not in this group of 458 and therefore would not have been promoted even if racial standardization had not been applied. Four other plaintiffs would have been promoted at the same time even if racial standardization had not been employed. These 244 plaintiffs did not suffer a job detriment as a result of the racial standardization. They cannot show any loss of pay as a result of the racial standardization.

Of the remaining 82 plaintiffs who were affected by racial standardization, it is also uncontested that only 42 of them had their potential promotions adversely affected by the out-of-rank-order promotions.

Absent racial standardization, the top 500 candidates (which is the approximate number of officers the City expected to promote) would have been composed of 416 Whites (83.2%), 66 African–Americans (13.2%), and 18 Hispanics (3.6%). By comparison, the racial composition of those who completed the application process was 66.6% White, 27.2% African–American, and 5.6% Hispanic. Stated a different way, absent racial standardization, 18.3% of White applicants were in the top 500, 7.1% of African–American applicants, and 9.4% of Hispanic applicants. If only the top 458 are considered, 16.8% of the White applicants would have been promoted, 6.4% of the African–American applicants, and 7.8% of the Hispanic applicants.

The highest possible score was 100. On this 100-point scale, a difference of 2 or 3 points could make a substantial difference in the rank order. For example, using the racially *un*standardized scores, the person ranked 630 had an 81.90 score and the person ranked 430 had an 83.59 score. The lowest-scoring Hispanic applicant among the racially standardized top 500 had a racially *un*standardized score of 80.95 (rank 774) and a racially standardized score of 83.43 (rank 417). The lowest-scoring African–American applicant among the racially standardized top 500 had a racially *un*standardized score of 80.70 (rank 854) and a racially standardized score of 82.82 (rank 497). Plaintiffs argue that the differences are made to appear artificially small by arbitrarily selecting a 100-point scale and by the standard deviation used for the rater standardization. As plaintiffs point out, the raw score differences may be substantially larger (at least viewed on an absolute scale). Plaintiffs, however, are pre-

---

**6.** This standardization was based on rank ordering the scores given by a particular rater, then assigning a point score to each applicant based on a standard deviation above and below a set median point score.

**7.** Plaintiffs object that the calculation of the top 458 still takes into account the elimination of certain questions, some or all of which were

eliminated because of poor scoring by minorities. *See* Pl. Response to 12(M) ¶¶ 68–69. As previously discussed, any claim based on the elimination of those questions is barred by *res judicata*. There is no genuine dispute as to the rank-order effect of the racial standardization that is at issue in the present case.

cluded from directly challenging the scaling and standard deviation methodology the City chose to employ. Moreover, the City presents evidence supporting that the test had a standard measure of error of more than three points. If proven, that would indicate that differences in scores of a few points are not significant. Moreover, plaintiffs present no evidence that differences of a few points on the test would be a significant predictor of job performance.

The evidence shows that the City believed the racially *un* standardized results of the test, if used to make the promotions, would not stand up to a Title VII challenge by African–Americans or Hispanics because of its adverse racial impact. The City chose to standardize scores by race. In doing this, the City assumed that, by group, Whites, African–Americans, and Hispanics all would have scored equally on a non-biased test. Therefore, the scores for African–Americans and Hispanics were adjusted so that they would be represented in the top 500 candidates in essentially the same proportion as their representation among applicants. Following racial standardization, the top 500 applicants consisted of 332 Whites (66.4%), 138 African–Americans (27.6%), and 30 Hispanics (6.0%). Stated another way, after racial standardization, 14.60% (332/2274) of White applicants were ranked in the top 500, 14.82% (138/931) of African–American applicants, and 15.63% (30/192) of Hispanic applicants. The racially *un* standardized scores were 82.98 for the 332nd White applicant, 80.70 for the 138th African–American applicant, and 80.95 for the 30th Hispanic applicant.

Between December 1988 and September 1991, 458 patrol officers were promoted to sergeant. 402 of the promotions were based on the rank order of the 1988 eligibility list derived from the racially standardized 1985–88 examination. The other 56 promotions were out-of-rank-order promotions. Of the 458 officers promoted, 298 (65.07%) were White, 119 (25.98%) were African–American, and 41 (8.95%) were Hispanic. The 1988 eligibility list was canceled on October 9, 1992. A new sergeant promotional examination was administered in 1993.

Neither side presents adequate evidence that the 1985–88 examination, either before or after racial standardization, was ever validated as job-related.

Plaintiffs present no evidence of emotional injury suffered by any individual plaintiff.

■ The first question to consider is standing, since that goes to the court's jurisdiction. To satisfy standing, a party must demonstrate at least the following

three things: (1) "injury in fact," by which we mean an invasion of a legally protected interest that is "(a): concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," *Lujan [v. Defenders of Wildlife,]* 504 U.S. [555,] 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 [ (1992) ]; (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court," *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); and (3) a likelihood that the injury will be redressed by a favorable decision by which we mean that the "prospect of obtaining relief from the injury as a result of a favorable ruling" is not "too speculative," *Allen v. Wright,* 468 U.S. [737,] 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 [ (1984) ]. These elements are the "irreducible minimum," *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), required by the Constitution.

*Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Fla.,* 508 U.S. 656, 663–64, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993).

In addition to constitutional requirements for standing, there are also prudential considerations. Prudential limitations include the general prohibition on a litigant raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that

a plaintiff's complaint fall within the "zone of interests" protected by the law invoked. *Allen v. Wright,* 468 U.S. at 751, 104 S.Ct. 3315; *Family & Children's Center, Inc. v. School City of Mishawaka,* 13 F.3d 1052, 1059 (7th Cir.), *cert. denied,* 513 U.S. 961, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994).

In *Jacksonville,* the City of Jacksonville had set aside 10% of contracts for minority business enterprises. The plaintiff in that case, which was an association, could not establish that any of its members would have been awarded a contract if not for the set aside. The Supreme Court nevertheless held that the plaintiff had standing, stating:

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.... [I]n the context of a challenge to a set-aside program, the "injury in fact" is the inability to compete on an equal footing in the bidding process, not the loss of a contract.

*Jacksonville,* 508 U.S. at 666, 113 S.Ct. 2297.

Defendant argues that the holding in *Jacksonville* is limited to situations where it cannot be determined who would have received the benefit if not for the unlawful classification. *Jacksonville* contains no such express statement, but the City relies on the fact that *Jacksonville* involved a set aside of contracts on which the plaintiff's members were not even permitted to bid and therefore, according to the City, it could not be shown who would have received any particular contract if it had been open to general bidding. *Jacksonville,* though, only indicates that the plaintiff in that case did not allege that it would have received one of the contracts; there is no statement or indication that it would have been impossible to prove a likelihood of receiving some contract. Defendants rely on *Harp Advertising Illinois, Inc. v.*

*Village of Chicago Ridge, Ill.,* 9 F.3d 1290, 1292 (7th Cir.1993), which describes *Jacksonville* as involving such an impossibility of proof. *Harp,* though, is not controlling in the present case. *Harp* was a First Amendment case and does not resolve the question of what is necessary to establish standing for an equal protection claim. The rule stated in *Jacksonville* is one that applies to equal protection claims. The emphasis in *Jacksonville* is on being unable to compete on an equal footing. *See Jacksonville,* 508 U.S. at 665–68, 113 S.Ct. 2297 (distinguishing *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

In *Tarpley v. Jeffers,* 96 F.3d 921 (7th Cir.1996), the plaintiff complained that he had been discriminated against in obtaining a job because of his lack of a political affiliation. His complaint concerned both an initial appointment as a temporary worker and a later appointment to the same position on a permanent basis. The same person was awarded both the temporary and permanent position. Summary judgment against defendant as to the permanent position was upheld on the ground that the undisputed facts showed that the other candidate was more qualified and would have been hired regardless of any patronage based on political affiliation. The claim as to the temporary position was remanded for a determination as to standing. Citing *Jacksonville,* the Seventh Circuit stated:

> Thus, for standing purposes, Tarpley need not prove that, had the hiring decision been untainted by political bias, he would have obtained the position. Here, as "in the context of a challenge to a set-aside program, the 'injury-in-fact' is the inability to compete on an equal footing...."

*Tarpley,* 96 F.3d at 923 (quoting *Jacksonville,* 508 U.S. at 666, 113 S.Ct. 2297). There is no indication in *Tarpley* that it would be necessary for Tarpley to show that it could not possibly be determined if he would have obtained the job if not for the patronage and such a situation was unlikely given that defendant was able to prove that he would not have obtained the exact same position on a permanent basis.

In *McNamara v. City of Chicago,* 138 F.3d 1219, 1222 (7th Cir.1998), the Seventh Circuit resolved the question of whether the constitutional requirements for standing can be satisfied in the present type of case. Like the present case, *McNamara* included plaintiffs that would not have been promoted even if racial preferences had not been employed. Those plaintiffs claimed emotional distress. In that case, the Seventh Circuit stated that the Article III constitutional standing requirements were satisfied and found it unnecessary to resolve whether the prudential requirements for standing would be satisfied, in particular the zone of interest requirement. *Id.* at 1222.[8] Following *McNamara,* it is clear that the 240 individual plaintiffs who would not have been hired, but claim emotional injury, still satisfy the constitutional requirements for standing. Additionally, such a holding is consistent with the holding of at least one other circuit as well as at least one district court case from the Seventh Circuit. *See Price v. City of Charlotte, N.C.,* 93 F.3d 1241, 1245–48 (4th Cir.1996), *cert. denied,* 520 U.S. 1116, 117 S.Ct. 1246, 137 L.Ed.2d 328 (1997); *Koski v. Gainer,* 1993 WL 488409 *2 (N.D.Ill. Nov.22, 1993). *See also Byers v. City of Albuquerque,* 150 F.3d 1271, 1275–76 (10th Cir.1998) (dictum). *But compare Grahek v. City of St. Paul, Minn.,* 84 F.3d 296, 298 (8th Cir.1996).

■ Plaintiffs present no evidence that they suffered emotional injury as a result of racial standardization, and it may be doubted that they can. As *Price,* 93 F.3d at 1246, 1248, makes clear, the injury must result from the racial standardization itself, not the denial of the promotion, and proof of emotional injury must be supported by more than just vague, conclusory testimony of humiliation, betrayal, or other emotional injury. *See also Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 416 (5th Cir.1998). In response to summary judgment, plaintiffs point to no evidence of emotional injury. However-

er, in responding to summary judgment, the nonmovant need only provide evidence as to factual issues raised by the movant. Defendant only argues that emotional injury cannot support standing; it does not contend that plaintiffs cannot show emotional injury. Since no factual issue was raised, plaintiffs were not obliged to present evidence showing they suffered emotional harm. At this juncture, allegations of emotional injury contained in the complaint are sufficient to show that there was emotional injury.

■ But even if no emotional injury occurred, the 244 plaintiffs would still have standing. They present adequate proof of unequal treatment based on race. Under § 1983, plaintiffs are entitled to nominal damages where they suffered unconstitutional treatment that caused no actual damages. *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Briggs v. Marshall,* 93 F.3d 355, 359–60 (7th Cir.1996); *Irish Lesbian & Gay Organization v. Giuliani,* 143 F.3d 638, 651 (2d Cir.1998); *Price,* 93 F.3d at 1246. Nominal damages are sufficient to support standing. *Irish Lesbian,* 143 F.3d at 651; *Suss v. American Society for Prevention of Cruelty to Animals,* 823 F.Supp. 181, 191 (S.D.N.Y.1993).

■ Defendant makes no argument regarding the prudential requirements for standing. The only one that possibly could be raised would be the argument that emotional injuries do not fall within the zone of interests protected by the Constitution or § 1983. In light of *Carey,* however, it would appear that such interests are protected. *See Price,* 93 F.3d at 1248. In any event, the prudential requirements will not be considered because they are not jurisdictional and should not be considered when not raised by the opposing party. *MacLauchlan v. Prudential Insurance Co. of America,* 970 F.2d 357, 359 n. 1 (7th Cir.1992); *Lindley v. Sullivan,* 889 F.2d 124, 129 (7th Cir.1989).

8. The Seventh Circuit held that it need not fully resolve the standing issue both because (a) the promotions of some plaintiffs were affected by the racial preferences and therefore at least some plaintiffs had standing and (b) because the question of standing as to those claiming only emotional injury was a prudential standing question and prudential standing issues (which are not jurisdictional) need not be reached if the case can be resolved on other grounds. Either ground was a sufficient basis for avoiding the standing issue and neither is clearly indicated to be *dictum.*

■ All the individual plaintiffs have standing to pursue their claims. However, as to the 244 individual plaintiffs whose promotions were not affected by any equal protection violation, defendant is entitled to summary judgment limiting any damages claims by those plaintiffs to emotional injury, if any, or nominal damages. They are not entitled to any damages for lost income or other similar economic damages. The 82 plaintiffs who may still seek damages based on lost income because of the denial of a promotion are listed in defendant's summary judgment exhibit 2, attachment B. They are Frank Aljinovic, John Bobko, James Bonk, John Burke, John Coghlan, Phillip Collins, James Cosgrove, Craig Cristoe, David Crowell, Ralph Culver, James Cummings, Patrick Darcy, James Darling, Lawrence Duggan, Sandra Engemann, Alan Falasz, Barbara Fiester, William Filipiak, Anthony Finocchio, John Fischer, Lenore Flaherty, Jerome Fluder, Charles Flynn, Patrick Forrester, Gerald Ganey, George Gottlieb, Anthony Graffeo, Edward Griffin, John Grill, Michael Groth, Gerald Hansen, Jacob Jachna, Kenneth Johnson, Robert Kero, James Kingsley, John Kocianis, Evelyn Kolerich, Edward Koop, William Kovacs, James Kuyken, Donald La Bresh, Thomas Lonergan, H.A. McCarthy, James McDonough, James McNally, Michael Magliano, Landon Matheson, Terence Mathews, Pasquela Mattera, William Moore, Robert Navigato, Anthony Niemotka, David Nowak, James O'Connell, Francis Pell, Anthony Pierotti, John Posluszny, James Povolo, Donna Raucci, Cora Roberts–Kurpis, Michael Rowan, Richard Rubin, Steven Schorsch, Anthony Serritella, Edward Shannon, Richard Sherman, Alan Stakis, Michael Stather, Lawrence Strzechowski, Stanley Surdej, Jerold Swarbrick, Allen Szudarski, William Town, Lawrence Tuider, John Turney, Louis Vernagallo, Donald Vetrovec, George Webber, William Whitters, Darlene Wicht, William Woitowich, and John Zotto.

■ Defendant also argues the undisputed facts show that there was no equal protection violation because its decision to apply racial standardization was justified by the compelling reason of avoiding committing a Title VII violation by using an employment test that had an adverse racial impact.[9]

■ This defense is based in part on faulty logic. Just because use of an employment test that has an adverse racial impact violates Title VII does not mean that an employment test without an adverse racial impact automatically satisfies Title VII or the Constitution. Title VII is not limited to prohibiting employment practices that have a racially disparate impact. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993); *Vitug v. Multistate Tax Commission,* 88 F.3d 506, 512 (7th Cir.1996). Title VII, like the Constitution, also prohibits intentional discrimination. *See Norris v. Waymire,* 114 F.3d 646, 650–51 (7th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 337, 139 L.Ed.2d 261 (1997); *Limes–Miller v. City of Chicago,* 773 F.Supp. 1130, 1140 (N.D.Ill.1991). Racial standardization avoided any Title VII claim of disparate impact based on the overall results of the test; it did not necessarily avoid a claim of intentional discrimination.

Defendant does not dispute that its use of racial standardization constitutes intentional use of racial criteria. The question is whether such use was justified by a compelling interest for which a narrowly tailored remedy was employed. *Erwin v. Daley,* 92 F.3d 521, 527 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997). Past discrimination is one such compelling interest. *See id.; McNamara,* 138 F.3d at 1222. That, however, is not the only possible compelling interest. *See, e.g., Wittmer v. Peters,* 87 F.3d 916 (7th Cir.1996), *cert. denied,* 519 U.S. 1111, 117 S.Ct. 949, 136 L.Ed.2d 837 (1997) (need to have African–Americans in positions of authority at a boot camp that had 68% African–American inmates). *See also McNamara,* 138 F.3d at 1222; *Erwin,* 92 F.3d at 528. Possibly, an attempt to avoid discrimination in violation of Title VII could be another such compelling

---

9. Defendant also contends that its use of racial standardization was permissible in light of a past history of discrimination. Defendant does not raise that defense on summary judgment because it concedes that factual disputes exist as regards that defense.

interest. It must be shown that the interest is a "truly powerful and worthy concern and that the racial measure ... adopted is a plainly apt response to that concern." *Wittmer*, 87 F.3d at 918. It must be shown that the defendant "had to do something and had no alternative .... The concern and the response, moreover, must be substantiated and not merely asserted." *Id.* There must be an actual showing of the need, not merely a commonsense determination that the remedy employed is the only adequate way to remedy the problem. *Id.* at 919.

■ Defendant has not made any such showing in this case. Defendant has not shown that the test could not be redesigned to have less of a discriminatory impact or simply not used if it could not meet Title VII criteria. Neither has defendant shown that the test could not have been validated as job-related despite its adverse impact. Despite a discriminatory impact, there is no Title VII violation if the test can be validated. Defendant also makes no attempt to show the test was culturally biased and that the racial standardization cured the bias. Neither has defendant attempted to show that it should have been expected that African–Americans and Hispanics would have been promoted at the same rates as Whites. Such an expected result cannot be merely assumed; it must be shown. *Cf. Wittmer*, 87 F.3d at 919 (state could not rely on commonsense assumption that there should be some correspondence between the racial composition of the prison population and the racial composition of the prison staff). Perhaps defendant will be able to show that racial standardization was justi-

fied by a combination of the need to cure past racial discrimination and the impact of the test. *See Erwin*, 92 F.3d at 527–28 (collecting cases). On the present motion, however, defendant has made no such adequate showing.[10] Defendant is not entitled to summary judgment dismissing the racial standardization claims.

■ The last issue to consider concerning the individual plaintiffs is whether their claims for injunctive relief are now moot. It is undisputed that defendant no longer uses the 1985–88 examination. Plaintiffs contend they have standing to seek injunctive relief because the 1998 sergeant promotions will involve race-based promotions in the guise of "merit" promotions. Plaintiffs, however, fail to support that contention with adequate evidence.[11] Moreover, merit promotions would be a procedure distinct from any involved in the present case. No adequate basis exists for presently considering injunctive relief that would prohibit present practices. *Cf. County of Los Angeles v. Davis*, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). As the Seventh Circuit has made clear, a case challenging a particular hiring procedure of the Chicago Police Department should not place the judge presiding over that case in the role of interminably overseeing subsequent hiring procedures. *See United States v. City of Chicago*, 870 F.2d 1256, 1259 (7th Cir.1989). The individual plaintiffs' claims for injunctive relief will be dismissed without prejudice. The 82 individual plaintiffs who were denied promotions are not precluded from seeking equi-

10. The City developed a complicated and sophisticated testing and scoring technique for selecting who would be ranked as the top 500 candidates. However, absent some evidence as to job-relatedness or cultural bias, all the City did with this complex procedure was ensure that the same proportion of Whites, African–Americans, and Hispanics (approximately 15% of applicants from each group) would finish in the top 500. The application of such a quota-like procedure must be adequately justified (by past race discrimination or another compelling interest) and narrowly tailored, just as the intentional application of a racial quota would have to be justified.

11. Plaintiffs' Local Rule 12(N) Statement contains no factual contentions regarding post–1991 events. In their answer brief, plaintiffs cite to

some exhibits supporting that merit promotions were planned. *See* Pl. Response to Summary Judgment at 9 (citing Pl. Exh. 25 & 27) (plaintiffs apparently also meant to cite Pl. Exh. 26). An announcement regarding a sergeants examination set for January 1998 makes reference to merit selection, but does not describe the manner of selection. The stipulated testimony of Mayor Daley from another case is from 1995. The news release provided is from 1996 and states that the procedures referred to therein would be discontinued after being used for a short period. The Illinois Appellate Court case cited is from 1995 and concerns a 1994 lieutenants examination. No evidence is presented as to what actually happened with merit promotions following the 1998 sergeants examination.

table relief in the form of promotions, priority for promotions, retroactive seniority, or other similar relief directly remedying any harm they prove was caused by unlawful practices.

Still to be considered are the claims of the FOP. The FOP seeks three types of relief: (a) lost wages and benefits for members who were bypassed for promotions; (b) injunctive relief declaring the promotions based on the 1991 eligibility list to be null and void; and (c) injunctive relief prohibiting further use of any promotional procedures found to be unconstitutional.

As to the lost wages and benefits of its members, the FOP makes no argument that it has standing to pursue such claims. The law is clear that it does not. *See Sanner v. Board of Trade of City of Chicago,* 62 F.3d 918, 922–23 (7th Cir.1995); *Irish Lesbian,* 143 F.3d at 650 n. 5. The FOP is not entitled to pursue a claim based on the lost wages of any of its individual members.

Another basis for the FOP remaining in this case is its prayer for relief voiding the promotions based on the 1988 eligibility list. This is an extraordinary form of relief that is possible, but generally should be avoided. *See Doll v. Brown,* 75 F.3d 1200, 1205 (7th Cir.1996). It is especially unlikely in the present case since the promotions in question occurred from 7 to 10 years ago and the City is frequently promoting new sergeants. *Cf. Adams v. City of Chicago,* 135 F.3d 1150, 1154–55 (7th Cir.1998). In any event, in response to the City's argument that voiding the promotions is relief that would not be granted in the present case, the FOP again makes no contrary argument. Therefore, this will not be considered a still-disputed issue.

The FOP's contention that it should remain in this case rests entirely on its contention that it would be entitled to injunctive relief prohibiting present or future discriminatory conduct. However, like the individual plaintiffs, the FOP presents no evidence that the 1985–88 practices central to this complaint continue today.[12] For the reasons already given as to the injunctive claims of the individual plaintiffs, the FOP has no presently cognizable claim for injunctive relief as to the City's present and future promotion procedures.

The FOP will be dismissed from this action without prejudice for lack of jurisdiction in that, as to all of its claims, it either lacks standing or the claims are moot.

All the discovery in this case is complete. The next action to take is the filing of a pretrial order. For purposes of trial, the case will be bifurcated between liability and damages. At this time, the pretrial order to be prepared will pertain to liability only. The pretrial order to be prepared is to be in full compliance with Local Rule 5.00, including statements of contested and uncontested facts and law, exhibit and witness lists, jury instructions, trial briefs, and all other required items. Facts that were raised on summary judgment and not adequately disputed will not be litigated at trial. For example, since plaintiffs did not satisfy their burden of raising a genuine factual dispute that the 1985–88 examination was job-related, they will not be permitted to attempt to prove that fact at trial. The racial composition of the applicant pool, those promoted, and the effect on the promotional pool of the racial standardization as set forth in this opinion (see pages 608–10 *supra*) was uncontested for purposes of summary judgment and shall be deemed stipulated facts for trial. Additionally, plaintiffs will not be permitted to raise issues that it has been held are barred by *res judicata, e.g.,* the weights assigned parts of the examination and the elimination of questions, both of which plaintiffs improperly attempted to raise in response to summary judgment.

The parties must engage in a substantial and serious effort to reach a stipulation as to

---

**12.** In ¶ 7 of its Rule 12(N) Statement, the FOP cites to a state court complaint it has filed regarding the 1998 sergeants examination. Even accepting the allegations of that complaint as true for purposes of summary judgment, the claims in that complaint are that the merit selection procedure violates the City's personnel rules and the FOP's collective bargaining agreement. The complaint quotes a nondiscrimination provision of the agreement, but there is no allegation of racial discrimination nor any claim of a constitutional violation.

as many facts as possible. Both sides are expected to act in good faith in narrowing the issues that remain for trial. Any claim or defense that will be raised at trial must be expressly included in the statement of contested issues of fact and law and adequately addressed in the trial brief or it will not be permitted to be raised at trial. The parties will be permitted to file trial briefs up to 30 pages in length.

IT IS THEREFORE ORDERED that:

(1) Defendant's motion for partial summary judgment [180–1] is granted in part and denied in part. Defendant's motion for summary judgment against the Fraternal Order of Police [190–1] is granted.

(2) The cause of action of plaintiff Fraternal Order of Police is dismissed without prejudice for lack of jurisdiction because of lack of standing and mootness.

(3) The claims of the remaining plaintiffs are limited to claims for nominal damages and emotional damages except that plaintiffs Frank Aljinovic, John Bobko, James Bonk, John Burke, John Coghlan, Phillip Collins, James Cosgrove, Craig Cristoe, David Crowell, Ralph Culver, James Cummings, Patrick Darcy, James Darling, Lawrence Duggan, Sandra Engemann, Alan Falasz, Barbara Fiester, William Filipiak, Anthony Finocchio, John Fischer, Lenore Flaherty, Jerome Fluder, Charles Flynn, Patrick Forrester, Gerald Ganey, George Gottlieb, Anthony Graffeo, Edward Griffin, John Grill, Michael Groth, Gerald Hansen, Jacob Jachna, Kenneth Johnson, Robert Kero, James Kingsley, John Kocianis, Evelyn Kolerich, Edward Koop, William Kovacs, James Kuyken, Donald La Bresh, Thomas Lonergan, H.A. McCarthy, James McDonough, James McNally, Michael Magliano, Landon Matheson, Terence Mathews, Pasquela Mattera, William Moore, Robert Navigato, Anthony Niemotka, David Nowak, James O'Connell, Francis Pell, Anthony Pierotti, John Posluszny, James Povolo, Donna Raucci, Cora Roberts–Kurpis, Michael Rowan, Richard Rubin, Steven Schorsch, Anthony Serritella, Edward Shannon, Richard Sherman, Alan Stakis, Michael Stather, Lawrence Strzechowski, Stanley Surdej, Jerold Swarbrick, Allen Szudarski, William Town, Lawrence Tuider, John Turney, Louis Vernagallo, Donald Vetrovec, George Webber, William Whitters, Darlene Wicht, William Woitowich, and John Zotto may also pursue damages based on lost wages, benefits, and other income as a result of the denial of a promotion, as well as related equitable relief. The prayer for injunctive relief is denied without prejudice as moot.

(4) For purposes of trial, the issues of liability and damages will be bifurcated. In open court on October 20, 1998 at 9:15 a.m., the parties shall submit a topbound, final pretrial order in full compliance with Local Rule 5.00, but limited to the issue of liability. The trial briefs shall not exceed 30 pages.